# EXHIBIT A

## Case Information

C23-00857 | ELIZABETH GRANADOS vs. CITY NATIONAL BANK

| | | |
|---|---|---|
| Case Number | Court | Judicial Officer |
| C23-00857 | CV - Martinez-Wakefield Taylor Courthouse | Treat, Charles S |
| File Date | Case Type | Case Status |
| 04/14/2023 | 26: Unlimited Other Real Property-eFile | Active |

## Party

Plaintiff/Petitioner
GRANADOS, ELIZABETH

Active Attorneys ▼
Lead Attorney
SHAPERO, SARAH
Retained

Defendant/Respondent
CITY NATIONAL BANK

Active Attorneys ▼
Lead Attorney
CRASTZ, JENNIFER WITHERELL
Retained

Defendant/Respondent
WHARTON NOTE COMPANY

Defendant/Respondent
DOES 1-50, INCLUSIVE

## Events and Hearings

04/14/2023 Fee Paid

04/14/2023 Civil Case Cover Sheet ▾

Civil Case Cover Sheet

> Comment
> Civil Case Cover Sheet

04/14/2023 Initial Complaint Filed ▾

INITIAL COMPLAINT FILED

> Comment
> INITIAL COMPLAINT FILED

04/14/2023 Original Summons Issued/Filed ▾

Summons ISSUED/FILED

> Comment
> Summons ISSUED/FILED

04/14/2023 Service of Complaint and Summons ▾

Requested By
GRANADOS, ELIZABETH

Served
04/19/2023

Served
05/17/2023

04/19/2023 Motion Filed To/For ▾

Motion Filed To/For Preliminary Injunction

> Comment
> Preliminary Injunction

04/19/2023 Memorandum of Points & Authorities Filed ▾

MPA ISO Motion for Preliminary Injunction

> Comment
> ISO Motion for Preliminary Injunction

04/19/2023 Declaration of ▾

Dec of Elizabeth Grandos ISO Motion for Preliminary Injunction

> Comment
> Elizabeth Grandos ISO Motion for Preliminary Injunction

04/19/2023 Lodge Order/Judgment ▾

[Proposed] Order Re Motion for Preliminary Injunction

> Comment
> [Proposed] Order Re Motion for Preliminary Injunction

04/19/2023 Proof of Service by Mail ▾

Proof of Service by Mail Re [Proposed] Motion for Preliminary Injunction

> Comment
> Re [Proposed] Motion for Preliminary Injunction

04/20/2023 Proof of Service of Summons ▾

POS of Summons on City National Bank

> Comment
> on City National Bank

05/17/2023 Notes ▾

> Comment
> Answer of City National Bank Filed

05/17/2023 Answer/Response/Denial - Unlimited ▾

Answer to Complaint by City National Bank

> Comment
> Answer to Complaint by City National Bank

05/25/2023 *Hearing on Motion in Re: ▾

Original Type
*Hearing on Motion in Re:

Minutes

Judicial Officer
Treat, Charles S

Hearing Time
9:00 AM

Result
Held

Comment
Forfeiture of Firearm

06/07/2023 Proof of Service of Summons ▾

POS of Summons on Wharton Note Company

> Comment
> on Wharton Note Company

06/08/2023 *Hearing on Motion in Re: ▾

Original Type
*Hearing on Motion in Re:

Minutes

Judicial Officer
Treat, Charles S

Hearing Time
9:00 AM

Result
Held

Comment
Preliminary Injunction

08/11/2023 *Case Management Conference ▼

CMC Notice - Fast Track

Judicial Officer
Treat, Charles S

Hearing Time
8:30 AM

## Documents

Civil Case Cover Sheet

INITIAL COMPLAINT FILED

Summons ISSUED/FILED

CMC Notice - Fast Track

Motion Filed To/For Preliminary Injunction

MPA ISO Motion for Preliminary Injunction

Dec of Elizabeth Grandos ISO Motion for Preliminary Injunction

[Proposed] Order Re Motion for Preliminary Injunction

Proof of Service by Mail Re [Proposed] Motion for Preliminary Injunction

POS of Summons on City National Bank

Answer to Complaint by City National Bank

Minutes

Minutes

POS of Summons on Wharton Note Company

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Sarah Shapero, Esq. (SBN 281748)
Shapero Law Firm, PC
100 Pine St., Ste. 530
San Francisco, CA 94111
T: (415)273-3504
F: (415)358-4116

TELEPHONE NO.: Plaintiffs,      FAX NO.:
ATTORNEY FOR *(Name):* GRANADOS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street Martinez, CA 94553
MAILING ADDRESS: 725 Court Street Martinez, CA 94553
CITY AND ZIP CODE: 725 Court Street Martinez, CA 94553
BRANCH NAME:

CASE NAME: GRANADOS v. CITY NATIONAL BANK, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER C23-00857 |
|---|---|---|
| ☑ Unlimited   ☐ Limited | ☐ Counter   ☐ Joinder | JUDGE: |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 6
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 13, 2023

Sarah Shapero
(TYPE OR PRINT NAME)          ►    *Sarah Shapero*        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

1
2
3
4
5

Sarah Shapero (Bar No. 286748)
Jessica Adair (Bar No. 348364)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, CA 94111
Telephone:    (415)273-3504
Facsimile:     (415)273-3508

6
7

Attorneys for Plaintiff,
ELIZABETH GRANADOS

Per local Rule, This case is assigned to
Judge Treat, Charles S, for all purposes.

8

**SUPERIOR COURT OF CALIFORNIA**
**FOR THE COUNTY OF CONTRA COSTA** SUMMONS ISSUED

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ELIZABETH GRANADOS, an individual;

Plaintiff,

v.

CITY NATIONAL BANK, a corporation,
WHARTON NOTE COMPANY, a
corporation and DOES 1-50, inclusive,

Defendants.

Case No.: C23-00857

**COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF**

1.  Violation of Federal Truth in Lending
    Act

2.  Violation of Fair Debt Collection
    Practices Act (FDCPA)

3.  Violation of 12 C.F.R. 1026.39

4.  Violation of 12 C.F.R. 1026.41

5.  Unfair Business Practices – Violation of
    Business & Professions Code § 17200, et
    seq.

6.  Declaratory Relief

**DEMAND FOR JURY TRIAL**

Plaintiff ELIZABETH GRANADOS, an individual, alleges as follows:

## **PARTIES**

1.     Plaintiff ELIZABETH GRANADOS (hereinafter referred to as "Plaintiff") is an individual.

2.     The real property commonly known as 90 Madera Court, Danville CA 94526 ("Subject Property") is located in the County of CONTRA COSTA in the State of California and is the property of Plaintiff.

3.     Plaintiff is informed and believes and based thereon alleges that Defendant; CITY NATIONAL BANK ("CNB" or "Defendant CNB") was and at all times relevant to the facts herein, bound by the laws of the state of California, doing business in CONTRA COSTA COUNTY, State of California.

4.     Plaintiff is informed and believes and based thereon alleges that Defendant; WHARTON NOTE COMPANY ("WHARTON" or "Defendant WHARTON") was and at all times relevant to the facts herein, bound by the laws of the state of California, doing business in CONTRA COSTA COUNTY, State of California.

5.     The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 20, are unknown to Plaintiffs who sue each Defendant by such fictitious names.  Plaintiff is informed and believes and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for the events and happenings referred to herein, either contractually or tortuously.   When Plaintiff ascertains the true names and capacities of DOES 1 through 20, she will amend this Complaint accordingly.

6.     Plaintiff is informed and believe and based thereon alleges that Defendants and each of them, are, and at all times herein mentioned were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-Defendants, and in committing the acts herein alleged, were acting within the scope of such affiliation with the knowledge, permission, consent or subsequent ratification of their co-Defendants.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this matter as the Subject Property (described below) is located in CONTRA COSTA County, California

8.      In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

9.      Defendants herein purposefully directed their activities to the State of California.   As a result, Defendants caused an event or events to occur in California, and more particularly in CONTRA COSTA County, out of which this action arises, and which form the basis of this action.

10.      Defendants either are entities duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

11.      Venue is proper for this Court since the Subject Property (described below) is located in CONTRA COSTA County and because the events or events out of which this action arises and which form the basis for this action arise in CONTRA COSTA County.

**AGENCY ALLEGATIONS**

12.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each of the remaining Defendants, and was acting in concert with each remaining Defendant in doing the things herein alleged, and, additionally has inherited any violations and/or the liability of their predecessors-in-interest, and has also passed on liability to their successors-in-interest, and at all times was acting within the course and scope of such agency, employment, partnership, and/or concert of action.

**STATEMENT OF FACTS**

13.      This dispute arises out of a residential loan transaction and Defendants' bad faith conduct related thereto. Plaintiff reasonably believed her loan with Defendant CNB had closed and stopped accruing interest, as no collection efforts or communications have been made on

the loan since 2015. Now, Plaintiff's creditors suddenly appear and seek to imminently

foreclose on her home of over twenty years. This lawsuit follows.

14.     Plaintiff is, and at all relevant times mentioned herein was, a resident of CONTRA

COSTA County, California, and is the rightful and lawful owner of real property commonly

known as 90 Madera Court, Danville CA 94526 ("Subject Property"), and is her personal and

principal residence.

15.     Plaintiff purchased the property on October 25, 2000, with her former husband, Brian V.

Granados. The deed was in Mr. Granados' name and Plaintiff placed the Property into a trust.

16.     On January 27, 2005, Plaintiff obtained a second-position mortgage in the amount of

$120,000 at an Interest Rate 7.75% from Defendant CNB and concurrently executed a Deed of

Trust as Security for the Note. The Note listed the "Borrower" as ELIZABETH GRANADOS.

The Deed of Trust listed Brian V. Granados and Elizabeth Granados, Trustees of The Granados

Revocable Living Trust as beneficiaries.

17.     The Agreement required the servicer to provide Plaintiff with monthly statements. A

copy of the Second Position Loan Agreement and Promissory Note is attached as **("Exhibit

A.")** Defendant CNB was also servicer of the Loan.

18.     From 2005 to 2008, Plaintiff was an exemplary borrower and timely paid roughly 25

percent of the balance during this time.

19.     In 2008, the Great Recession hit the United States and the economy toppled.  As a

result, in September 2010, Plaintiff was unable to maintain her monthly payments and defaulted

on the loan. Defendant CNB thereafter accelerated the balance and declared the entire sum

payable. During this time, Plaintiff and her former husband were separated, and Plaintiff filed

for divorce in 2010.

20.     In 2011, Plaintiff's business went under.

21.     On May 21, 2012, Plaintiff's former husband filed for Voluntary Chapter 13 Bankruptcy

in the United States Bankruptcy Court- Northern District of California. Eventually, Plaintiff's

former husband converted the bankruptcy into a Chapter 7. The second position loan with

Defendant CNB was a scheduled debt in these proceedings. In addition, Plaintiff's former husband signed over the deed to the Subject Property in his petition., thereby making the Subject Property the property of the Bankruptcy Estate. (*See* United States Bankruptcy Case No. 12-44391.)

22.     Beginning in December 2013, Plaintiff worked with Karen Mack, VP of Special Assets with Defendant CNB, to secure a foreclosure alternative. By this time, Defendant CNB still had not set a foreclosure sale date. Plaintiff was in close contact with Karen Mack for several months, as she continuously submitted financial information to be considered for an alternative. In addition, Karen Mack continuously agreed to delay the foreclosure action while Plaintiff coordinated with her former husband's bankruptcy action.

23.     On May 15, 2014, Defendant CNB denied Plaintiff's loan modification application, but Karen Mack stated that, "At this time, until further notice, CNB has placed the foreclosure action on hold." **("Exhibit B")**

24.     Mr. Granados' Chapter 7 Bankruptcy was closed on November 21, 2014.

25.     On May 26, 2015, due to ongoing divorce proceedings with her former husband, Plaintiff needed information about the loan with Defendant CNB. Plaintiff had stopped receiving monthly statements from Defendant CNB and had not heard from Defendant CNB since November 2014. Still under the impression that Defendant CNB halted foreclosure action, Plaintiff asked for an accounting on the loan. Karen Mack responded that she would be out of the office on May 27, 2015. This was the last time Plaintiff heard from Karen Mack.

26.     In 2017, Plaintiff and her former husband finalized their divorce. Mr. Granados deeded the Subject Property to Plaintiff.

27.     From May 27, 2015, to November 2022, Plaintiff wholly stopped receiving monthly statements or any communication on the loan from Defendant CNB. Plaintiff understood this to mean that the loan was closed and was no longer accruing interest. Additionally, Plaintiff received no future communication from **any** company regarding this loan. Again, based on the lack of monthly statements, she reasonably believed they did not actually owe a debt.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

28. On November 30, 2022, after nearly eight years of no communication and no monthly statements, Plaintiff received a notice that Defendant CNB had transferred servicing rights to Defendant WHARTON. Plaintiff was stunned and terrified. This was the first she had ever heard of Defendant WHARTON, as she never received communications about the existence of the loan nor monthly statements. Additionally, this was the first she had heard of the Second Position Loan since 2015.

29. On March 16, 2023, Defendant WHARTON recorded a Notice of Default on the Subject Property and stated that the amount owed was $239,278.00. Contrary to her understanding and unbeknownst to Plaintiff, Defendants charged principal and interest for every month since 2015. Plaintiff could not comprehend that a debt she reasonably believed was closed almost 8 years ago, would now suddenly reappear and come back to haunt her. As a result, Plaintiff now owes $239,278.00 in principal and interest that accrued on the loan when no collection activity was occurring.

30. Defendants, through substantive and procedural irregularities of the non-judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of the Subject Property. Because of Defendants' inexplicable delay in collecting, and entire failure to communicate the Loan's status, Plaintiff incurred an enormous debt, which includes penalties and interest on back dues that Plaintiff should never have owed but for Defendants' conduct. Furthermore, Plaintiff incurred the present costs and attorney fees to bring this action. The loan would not be in default and the property would not be in foreclosure if not for Defendants' bad faith tactics.

**STATUTE OF LIMITATIONS – RULE OF DISCOVERY**

31. Under the rule of discovery, the statute of limitations on claims does not run until Plaintiff discovers the injury.

32. In the present case, Plaintiff reasonably believed, in May 2015, Defendant CNB closed the loan, and the loan was not accruing interest. After that time, Plaintiff received no further communication whatsoever regarding the loan until November 2022, which was the first

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

communication that Plaintiff had on the loan in over 8 years. Therefore, the statute of limitations for Plaintiff's claims were tolled until November 2022.

**FIRST CAUSE OF ACTION**
**Violation of Federal Truth in Lending Act**
**(Against All Defendants)**

33.     Plaintiff incorporates all allegations of this complaint and re-alleges them as they were fully set forth herein.

34.     The federal TILA requires a lender to provide monthly statements "transmitted to the obligor" for each billing cycle in which there is an outstanding balance or imposition of finance charges (15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7) Defendants failed to transmit to Plaintiff a single monthly statement since 2015. Each month that Defendants failed to provide a billing statement when funds were due is a separate violation of this provision.

35.     As a result of Defendants failure to communicate or transmit monthly statements for over 8 years, Plaintiff could not have possibly known she owed an outstanding debt. Simply putting Plaintiff on notice, would have spared her a decade of apparent unpaid debt.

36.     For these violations, Defendants are liable to Plaintiff for actual damages, twice the amount of the considerable finance charges, and attorney fees and costs. (15 U.S.C. § 1640(a)(1), (2)(A)(i), (3).)

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(Against Defendant CNB)**

37.     Plaintiff incorporates all allegations of this complaint and re-alleged them as they were fully set forth herein.

38.     The elements for a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach of contract, and (4) resulting damages.

39.     In the case at hand, the Deed of Trust sets forth the agreement between the parties and provides that Defendant send monthly statements to the borrower each month in which there is an outstanding debt.

40.     Despite this provision, Defendant CNB failed to provide Plaintiff monthly statements since 2015, on or around the time her former husband's bankruptcy was closed.

41.     As a result, Plaintiff was unaware that Defendant CNB had not actually closed the loan file and was, instead, collecting interest on Plaintiff's loan and charging for late fees, penalties, and other fees due to the purported default on the loan.

42.     As a result of Defendant's breaches of contact, Plaintiff has suffered and continue to suffer actual damages including, but not limited to, the imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees, and other damages, according to proof at trial but within the jurisdiction of this Court

### THIRD CAUSE OF ACTION
**Breach of Implied Covenant**
**(Against all Defendants)**

43.     Plaintiff incorporates all allegations of this complaint and re-allege them as they were fully set forth herein.

44.     Under California law, every contract or agreement contains an implied promise of good faith and fair dealing. (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658). This covenant not only creates an obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract, but also requires each party to refrain from unfairly interfering with the right of the other party to receive the benefits of the contract.  (Id.)

45.     As established above, Plaintiff was in a contractual relationship with Defendant CNB under the Original Deed of Trust and Defendant WHARTON under the Assignment ofDeed of Trust.

46.     As such, Defendants had a contractual obligation to refrain from hindering Plaintiff's performance under the contract.

47.     By failing to transmit a single monthly statement for almost 8 years and ceasing all collection activities until they recorded an NOD, Defendants allowed Plaintiff to reasonably believe she no longer owed a debt. As a result, Plaintiff did not make payments on the loan for over 8 years and unknowingly defaulted and accrued interest. Simply put, Defendants, through

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

their own inaction, interfered with Plaintiff's ability to perform on the contract and thereby induced Plaintiff's breach.

48.     As a result of Defendant's breaches of covenant, Plaintiff suffered and continues to suffer actual damages including, but not limited to, the imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees, and other damages, according to proof at trial but within the jurisdiction of this Court

**FOURTH CAUSE OF ACTION**
**Violation of Fair Debt Collections Practices Act**
**(Against All Defendants)**

49.     Plaintiff incorporates all allegations of this complaint and re-allege them as they were fully set forth herein.

50.     The Fair Debt Collection Practices Act provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any, including use of a false representation of the character, amount, or legal status of any debt. See 15 U.S.C. § 1692e(2)

51.     Pursuant to 15 U.S.C. § 1692a(6), Defendants are debt collectors because they regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another.

52.     Plaintiff is informed and believes that, despite seemingly forgiving Plaintiff's loan and leading her to believe the loan no longer existed, Defendant considered Plaintiff's loan in default since in or around 2015, prior to when Defendants began making collection demands on the loan.

53.     The FDCPA outlaws the following collection practices: making a false representation about the character, amount, or legal status of a debt (15 U.S.C. § 1692e(A)(2)), threatening to take action that cannot be legally taken (15 U.S.C. § 1692e(A)(5)), using a false representation to attempt to collect the debt (15 U.S.C. § 1692e(A)(10); and attempting to collect an amount not expressly authorized by the loan agreement (15 U.S.C. § 1692f(1)).

54.     In the case at hand, Defendants violated each of these provisions by misstating the amount of Plaintiff's original loan and the amount that could legally be collected under the loan agreement, threatening to foreclose on Plaintiff's home pursuant to a Deed of Trust for a loan that has been forgiven, and attempting to collect amounts not permitted under the Deed of

9
COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Trust. Defendants are misstating the amount owed because they considered the loan in default over 10 years ago but did not begin collection activities until <u>far after</u> the loan reached its maturity date.

55.     Pursuant to 15 U.S.C. § 1692k, Defendants is liable for actual damages, civil penalties in the amount of $1,000, attorney's fees, and costs of court. (Civ. Code § 1788.30; 15 U.S.C. § 1692k(a).)

**FIFTH CAUSE OF ACTION**
**Violation of 12 C.F.R. 1026.39**
**(Against all Defendants)**

56.     Pursuant to 12 C.F.R. 1024.39, "a servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent."

57.     In the present case, Defendants wholly failed to establish or attempt live contact whatsoever with Plaintiff regarding the delinquency on the loan in accordance with the statute. The first communication Plaintiff received from Defendants about the deliquency <u>was a Notice of Default over a year past the loan's original maturity date</u>—which is more than 8 years since Plaintiff last heard or thought about the Loan.

58.     A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).Pursuant to 12 U.S.C. 2605(f), whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the sum of any actual damages to the borrower as a result of the failure and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.  Plaintiff is also entitled to injunctive relief to enjoin the violation of this statute.

**SIXTH CAUSE OF ACTION**
**Violation of 12 C.F.R. 1026.41**
**(Against all Defendants)**

59.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

10

60.     Plaintiff's loan is a federally chartered loan pursuant to 12 C.F.R. 1024.41.

61.     Pursuant to 12 C.F.R. 1026.41, a servicer shall provide the consumer for each billing cycle a period statement meeting the requirements of this section.  In the present case, Defendants failed to provide Plaintiff with <u>any monthly billing statements</u>.  Furthermore, this section provides that, once a loan is charged off, interest shall not accrue on said loan.

62.     A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).Pursuant to 12 U.S.C. 2605(f), whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the sum of any actual damages to the borrower as a result of the failure and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition – Violation of Business and Professions Code §§17200 *et seq.***
**(Against all Defendants)**

63.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

64.     Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* borrows violations from other statutes and laws and makes them unlawful to engage in as a business practice.  Plaintiff's California Business and Professions Code § 17200 allegations are *tethered* to the following laws:

65.     Defendant' violations of the Consumer Finance Regulations constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

66.     Defendants' breach of contract constitutes unlawful business practices under California Business and Professions Code § 17200 *et seq.*

67.     As a result of Defendants' wrongful conduct, Plaintiff has suffered various injuries according to proof at trial, including but not limited to the destruction of her credit.

68.     Plaintiff seeks injunctive relief enjoining Defendant from engaging in the unfair business practices described herein.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

69.     Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## EIGHTH CAUSE OF ACTION
### Declaratory Relief
### (Against All Defendants)

70.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

71.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning the respective rights and duties pursuant to the Deed of Trust and Promissory Note.

72.     Defendants have demanded monies from Plaintiff for months in which interest should not have accrued, as set forth above.

73.     Plaintiff seeks a judicial determination as to the amount past due.

74.     A judicial declaration is necessary and appropriate at this time so that the parties can ascertain their rights and duties under the Agreements.

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

WHEREFORE, Plaintiff ELIZABETH GRANADOS demands a trial by jury.  Plaintiff also prays for judgment and order against Defendants as follows:

1.  That judgment is entered in Plaintiff's favor and against Defendants, and each of them;

2.  For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3.  For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the subject loan until the amount of the loan is determined and from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;

4.  For damages, disgorgement, and injunctive relief;

5.  For compensatory damages, special damages, damages for emotional distress, attorneys' fees, and costs according to proof at trial;

6.  For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

7.  For such other and further relief as the Court may deem just and proper.

DATED: April 14, 2023,                          Respectfully submitted,

                                                SHAPERO LAW FIRM

                                                _Jessica Adair_
                                                _____
                                                Sarah Shapero, Esq.
                                                Jessica Adair, Esq.
                                                Attorneys for Plaintiff
                                                ELIZABETH GRANADOS

# EXHIBIT A

Recording Requested By And

When Recorded Mail To:
**City National Bank**
**831 S. Douglas Street, #107**
**El Segundo, Ca. 90245**
**Attention: Olivia Reed**
711139.00003

Space Above This Line for Recorder's Use

A.P.N. 218-252-001

## DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust and Assignment of Rents (hereafter, "Deed of Trust") is made this **27th** day of **January 2005**, between **Brian Valentino Granados, who acquired title as Brian V. Granados and Elizabeth Granados, Trustees of The Granados Revocable Living Trust, dated September 25, 1998,** herein called TRUSTOR, whose address is **90 Madera Court, Danville California 94526, Chicago Title Insurance Company,** a California corporation herein called **TRUSTEE,** and **City National Bank,** a national banking association, herein called **BENEFICIARY.**

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in **Contra Costa** County, **City of Danville,** California described as:

**Lot 27, as delineated upon that certain Map entitled, "Subdivision 3537, Portion of San Ramon, County of Contra Costa, California", filed for record in the Office of the Recorder of the County of Contra Costa, State of California, On December 29, 1967, in Book 118 of Maps, at Page(s) 30 to 36.**

Property also known as: **90 Madera Court, Danville, California 94526**

TOGETHER WITH an absolute assignment of the leases, rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

This Deed of Trust is made for the purpose of securing:

1.      Performance of each agreement of Trustor herein contained, and repayment of any funds advanced by or which Beneficiary or Trustee become obligated to advance under this Deed of Trust.

2.      Payment of the indebtedness evidenced by one promissory note dated **January 27, 2005,** and any extensions or renewals thereof, in the principal sum of **$120,000.00** executed by **Elizabeth Granados** in favor of Beneficiary or order.

3.      Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by a promissory note or notes reciting it is so secured.

**To Protect the Security of This Deed of Trust, Trustor Agrees as Follows:**

4.      Trustor shall, with respect to the property described in this Deed of Trust:

        4.1      Keep said property in good condition and repair;

        4.2      Not remove or demolish any building or other structure;

Granados.deed-odr.doc Rev. 06/25/02 CLC
Deed of Trust and Assignment of Rents/3rd Party

1

4.3     Complete or restore promptly and in good and workmanlike manner any building or other structure which may be constructed, damaged or destroyed and pay when due all claims for labor performed and materials furnished therefor;

4.4     Comply with all laws affecting said property or requiring any alterations or improvements to be made thereon;

4.5     Not commit, suffer or permit waste;

4.6     Not commit, suffer or permit any act upon such property in violation of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to hazardous or toxic waste;

4.7     Cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the property may be reasonably necessary to maintain its value, the specific enumerations herein not excluding the general;

4.8     Provide, maintain and deliver to Beneficiary such evidence of insurance coverage as is satisfactory to and with loss payable to Beneficiary.

4.9     Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4.10    Pay at least ten (10) days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock;

4.11    Pay when due, all encumbrances, charges and liens which appear to be prior or superior to the lien created by this Deed of Trust, together with any interest, costs or other sums secured thereby;

4.12    Cure within the time specified in any lease or sublease, or immediately if not specified, any defaults or breaches thereof and do all acts necessary to insure that any such lease or sublease remain in full force and effect;

4.13    With respect to any property described above which is less than a fee-simple estate, including but not limited to a leasehold estate:

4.13.1    Trustor shall cure within the time specified in the above-described lease, or other agreement, or immediately if not specified therein, any default or breaches thereof and to do all acts necessary to insure the above-described lease or other agreement remains in full force and effect;

4.13.2    Trustor shall not voluntarily terminate, surrender or subordinate any leasehold or other estate encumbered hereby and any attempt by Trustor to do so shall be wholly void and without any force and effect.

5.     Trustor covenants and agrees that to effectuate the terms and conditions of this Deed of Trust:

5.1     Trustor shall, upon reasonable notice by Beneficiary, during normal business hours or at such other time if reasonably required, permit Beneficiary, and any of its agents or employees to inspect the property and copy such records of Trustor that pertain to the property, whether or not located at the property.

5.2     Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees. Trustor shall pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount set forth in the promissory note secured hereby, or if the obligation secured hereby does not specify a rate of interest, at a rate of interest equal to the Beneficiary's Prime Rate as it may exist from time to time plus five percent (5.0%) but in no event less than ten percent (10.0%) per annum.

5.3     Trustor agrees to indemnify and hold Beneficiary, and any of its successors in interest, harmless from any waste or violations of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to hazardous or toxic wastes.

5.4     Any award of damages in connection with any condemnation for public use of or injury to said property is hereby assigned and shall be paid to Beneficiary who shall apply said moneys in reduction of the principal amount of the indebtedness secured to the extent necessary to render its security unimpaired.  If the obligation secured hereby includes obligations to reimburse the Beneficiary for moneys the Beneficiary is committed to advance to Trustor or third persons in the future, said award of damages shall be held as collateral for such reimbursement obligation in lieu of the property which is condemned.  In the event of a partial taking in condemnation, the proceeds shall be apportioned in accord with the provisions of California Code of Civil Procedure Section 1265.225, as it is in effect at the time of the award.  An action for inverse condemnation shall be deemed an action for condemnation under this paragraph.

5.5     Insurance proceeds shall be held, in trust, by Beneficiary and applied to the reasonable costs of repair and restoration of the property if such proceeds, together with funds supplied by Trustor, are sufficient to restore the property in such a manner that the Beneficiary's security interest hereunder remains unimpaired.  If the insurance proceeds, together with funds supplied by Trustor, are not sufficient to restore the property in such a manner that the Beneficiary's security interest hereunder remains unimpaired, said proceeds, at the option of Beneficiary, may be applied to the obligation secured hereby or to restoration of the property.  If Trustor disagrees with Beneficiary's disposition of insurance proceeds hereunder, Trustor agrees to submit the matter to binding arbitration before a three-member panel (or one-member panel if the insurance proceeds are less than $200,000) of the American Arbitration Association pursuant to the rules and regulations of the American Arbitration Association.  The arbitrators shall also apportion the costs of arbitration, including attorneys' fees, to the extent each party has prevailed.

6.     As additional security, Trustor hereby gives to, confers upon and absolutely assigns to Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.  The absolute assignment of rents, issues and profits contained in this Deed of Trust constitutes a present transfer of Trustor's interest in existing and future rents, issues and profits with respect to the property described in this Deed of Trust effective upon the execution and delivery of this Deed of Trust.

7.     Trustor or any other person legally entitled thereto agrees to pay $30.00 for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby.

8.     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

9.     At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the evidence of the obligation secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may:  reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

10.     Upon written request of Beneficiary stating that all sums secured hereby have been paid, if applicable, Beneficiary's statement that no further commitment exists to make future advances or extend credit, and upon surrender of this Deed of Trust and the evidence of the obligation secured hereby to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.  Upon written request of Beneficiary, if less than all sums secured hereby have been paid, Trustee shall reconvey, without warranty, the portion of the property then held hereunder specified by Beneficiary.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."  Five (5) years after issuance of such full reconveyance, Trustee may destroy the evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

11.     Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and

demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the evidence of the obligation secured hereby and all documents evidencing expenditures secured hereby.

To the extent the obligation secured hereby arises from a commitment of Beneficiary to make future advances either to Trustor or a third party or extend credit subsequent to the recordation of a notice of default hereunder, the sums secured hereby shall also include the amount of such commitment to make future advances or extend credit, and subject to acceleration as provided in the previous paragraph. The Trustee shall pay such amount at such time as it pays all other sums secured hereby and the Beneficiary shall hold same as additional collateral for the obligation secured hereby, at such interest as is available to Beneficiary's customers in an insured deposit account with no restrictions on withdrawal.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.

If said property consists of more than one lot or parcel, the lots or parcels may be sold separately, together or in any combination, at the sole discretion of the Beneficiary. Trustor waives the right to direct the order in which said property may be sold when it consists of more than one lot or parcel. The order of sale of said property when it consists of more than one lot or parcel shall be at the sole discretion of the Beneficiary.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

12.     This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the evidence of the obligation secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

13.     That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

14.     With respect to any Trustor under this Deed of Trust who is not obligated to repay the indebtedness referred to in Paragraph 2 above, such Trustor:

14.1     Authorizes Beneficiary without notice or demand and without affecting the security granted hereunder, from time to time to renew, compromise, extend, accelerate or otherwise change the time for payment of or otherwise change the terms of the indebtedness secured hereby, or any part thereof, including increase or decrease of the rate of interest thereon;

14.2     Waives any right to require Beneficiary to proceed against the persons liable for the indebtedness secured by this Deed of Trust, to proceed against or exhaust any other security securing the obligations secured by this Deed of Trust or to pursue any other remedy in Beneficiary's power whatsoever;

14.3     Waives any defense arising by reason of any disability, other defense, or the cessation from any cause whatsoever of the liability of any person liable for the indebtedness secured hereby.

14.4     Waives all such Trustor's rights and defenses described in Civil Code §2856(a).

Until all indebtedness secured by this Deed of Trust shall have been paid in full, and no commitment on the part of the Beneficiary to make future advances or extend credit either to Trustor or a third party exists, Trustor shall have no right of subrogation, and waives any right to enforce any remedy which Beneficiary now has or may hereafter have against any person liable for the indebtedness secured hereby, and waives any benefit of, any right to participate in any security now or hereafter held by Beneficiary and without limiting the generality of the foregoing, Trustor specifically waives and relinquishes as against Beneficiary any defense or benefit otherwise available to Trustor should Beneficiary make an election of remedies as against any person liable for the indebtedness secured hereby (and irrespective of the circumstances or manner in which or whereby such election is made) which destroys or impairs Trustor's subrogation rights or rights to proceed against any person liable for the indebtedness secured hereby for reimbursement. Trustor assumes the responsibility for being and keeping himself informed of the financial condition of any person liable for the indebtedness secured hereby and of all other circumstances bearing upon the risk of nonpayment of the indebtedness secured hereby which diligent inquiry would reveal, and agrees that Beneficiary shall have no duty to advise Trustor of information known to it regarding such condition or circumstances.

SHOULD THE TRUSTOR OR HIS SUCCESSOR IN INTEREST WITHOUT THE PRIOR WRITTEN CONSENT OF THE BENEFICIARY SELL, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATE, ASSIGN OR ENCUMBER HIS INTEREST IN THE PROPERTY (OR ANY PART THEREOF), WHETHER VOLUNTARILY OR INVOLUNTARILY, THEN BENEFICIARY MAY AT ITS ELECTION DECLARE ALL SUMS SECURED HEREBY IMMEDIATELY DUE AND PAYABLE. THIS PROVISION SHALL APPLY TO EACH AND EVERY SALE, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATION, ASSIGNMENT OR ENCUMBRANCE REGARDLESS WHETHER OR NOT BENEFICIARY HAS CONSENTED TO, OR WAIVED, ITS RIGHT HEREUNDER, WHETHER BY ACTION OR NON-ACTION, IN CONNECTION WITH ANY PREVIOUS SALE, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATION, ASSIGNMENT OR ENCUMBRANCE, WHETHER ONE OR MORE.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor:

_____
Brian Valentino Granados, Trustee of The Granados Revocable
Living Trust, dated September 25, 1998

_____
Elizabeth Granados, Trustee of The Granados Revocable
Living Trust, dated September 25, 1998

# EXHIBIT B

# RE: Your CNB Loans

From: Mack, Karen (karen.mack@cnb.com)

To: lizssmail@yahoo.com

Date: **Thursday, May 15, 2014 at 03:18 PM PDT**

Dear Liz,

After review of the financials you provided as well as the appraised value of your residence that secures your City National Bank (CNB) loans, attached above is CNB's denial of your loan modification requests. A copy of each letter will also be mailed to your attention. At this time and until further notice, CNB has placed the foreclosure action on hold.

Please feel free to contact me should you have any questions concerning this matter.

Sincerely,

**Karen Mack, VP** | Special Assets | **CITY NATIONAL BANK** | Loan Origination ID #589163
555 South Flower St, 16th Fl | Los Angeles, CA 90071
T: 213.673.8953 | F: 213.673.8958 | karen.mack@cnb.com

Visit us at www.cnb.com

The foregoing is neither an offer nor acceptance concerning any existing agreement. No offer or acceptance is valid as against the Bank unless signed in ink by an authorized officer of the Bank. No email from the Bank shall be deemed to constitute an offer or acceptance concerning any agreement. The Bank intends that there shall be no claims of estoppel and that no person shall change position in reliance upon this correspondence. Nothing in this correspondence is to be construed as a waiver, limitation, or release of any and all rights and remedies of the Bank.

CAUTION - CONFIDENTIAL
The information contained in this email transmission, and any attachments thereto, is intended solely for the named addressee(s) and may contain privileged or confidential information. If you have received this e-mail in error or are not otherwise an intended recipient, please do not use or distribute this e-mail or its contents, notify me at once by return e-mail or telephone and delete or destroy this e-mail and any copies.

XX2837-1_Granados_02464e_NAA_5.15.14.pdf
40kB

XX1139-3_Granados_02464e_NAA_5.15.14.pdf
40kB

*see denial of loan modification requests in "Documents" packet*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITY NATIONAL BANK, a corporation, WHARTON NOTE
COMPANY, a corporation and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELIZABETH GRANADOS, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Contra Costa Superior Court<br>725 Court Street Martinez, CA 94553 | CASE NUMBER:<br>*(Número del Caso):*<br><br>C23-00857 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sarah Shapero - Shapero Law Firm, P.C. - 100 Pine Street, Ste 530, San Francisco, CA 94111
(415) 273-3504 - sarah@shaperolawfirm.com

| DATE:<br>*(Fecha)* 4/14/2023 10:20 AM | Clerk, by<br>*(Secretario)* /s/ T. Jacobsen-Rios | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

1
2
3
4
5
6

Sarah Shapero (Bar No. 281748)
Jessica Adair (Bar No. 348364)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, CA 94111
Telephone:   (415) 273-3504
Facsimile:   (415) 273-3508

Attorney for Plaintiff,
ELIZABETH GRANADOS

7

## SUPERIOR COURT OF CALIFORNIA

8

## FOR THE COUNTY OF CONTRA COSTA

9
10
11

ELIZABETH GRANADOS, an individual;

              Plaintiff,

    v.

12
13
14

CITY NATIONAL BANK, a corporation, WHARTON NOTE COMPANY, a corporation and DOES 1-50, inclusive,

Defendants.

Case No.: C23-00857

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

Date:    5/25/2023
Time:    9:00a
Dept:    12

15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that as soon as this matter may be heard, in the above-mentioned court, Plaintiff, ELIZABETH GRANADOS (hereinafter "Plaintiff") will and hereby does move for a Preliminary Injunction to enjoin the recording of a Notice of Trustee's Sale of the subject property located at 90 Madera Court, Danville CA 94526. Plaintiff's Motion for a Preliminary Injunction will be brought pursuant to California Code of Civil Procedure §§ 526, 527. This Motion will be based upon this Notice of Motion, the Memorandum of Points and Authorities, the supporting declarations and evidence filed concurrently herewith, and any arguments set forth at the hearing.

For the reasons stated herein, good cause exists to grant Plaintiff's motion for a Preliminary Injunction.

DATED: April 19, 2023                    Respectfully submitted,

                                         SHAPERO LAW FIRM

                                         *Jessica Adair*
                                         Sarah Shapero, Esq.
                                         Jessica Adair, Esq.
                                         Attorney for Plaintiff,
                                         ELIZABETH GRANADOS

1  Sarah Shapero (Bar No. 281748)
   Jessica Adair (Bar No. 348364)
2  SHAPERO LAW FIRM
   100 Pine St., Ste. 530
3  San Francisco, CA 94111
   Telephone:   (415) 273-3504
4  Facsimile:   (415) 358-4116

5
   Attorney for Plaintiff,
6  ELIZABETH GRANADOS

7                  **SUPERIOR COURT OF CALIFORNIA**

8                **FOR THE COUNTY OF CONTRA COSTA**

9  ELIZABETH GRANADOS, an individual;    Case No.: C23-00857

10          Plaintiff,

11     v.                                 **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
12  CITY NATIONAL BANK, a corporation,    MOTION FOR PRELIMINARY
    WHARTON NOTE COMPANY, a              INJUNCTION**
13  corporation and DOES 1-50, inclusive,
                                          Date:
14          Defendants.                   Time:
                                          Dept:
15

16

17  **I.          INTRODUCTION**

18          This dispute arises out of a residential loan transaction and Defendants' bad faith

19  conduct related thereto. Plaintiff reasonably believed her loan with Defendant CNB had closed

20  and stopped accruing interest, as no collection efforts or communications have been made on

21  the loan since 2015. Now, Plaintiff's creditors suddenly appear, demand over eight years of

22  interest owed and seek to imminently foreclose on her home of over twenty years. Such actions

23  violate several federal statutes and common law, as Defendants' lack of communication and

24  collection induced Plaintiff into default. For these reasons, the Court should grant Plaintiff's

25  motion for a preliminary injunction.

26

27

28
                                          1

            MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                    MOTION FOR PRELIMINARY INJUNCTION

II.     **STATEMENT OF FACTS**

Plaintiff is, and at all relevant times mentioned herein was, a resident of CONTRA COSTA County, California, and is the rightful and lawful owner of real property commonly known as 90 Madera Court, Danville CA 94526 ("Subject Property"), and is her personal and principal residence. Plaintiff purchased the property on October 25, 2000, with her former husband, Brian V. Granados. The deed was in Mr. Granados' name and Plaintiff placed the Property into a trust.

On January 27, 2005, Plaintiff obtained a second-position mortgage in the amount of $120,000 at an Interest Rate 7.75% from Defendant CNB and concurrently executed a Deed of Trust as Security for the Note. The Note listed the "Borrower" as ELIZABETH GRANADOS. The Deed of Trust listed Brian V. Granados and Elizabeth Granados, Trustees of The Granados Revocable Living Trust as beneficiaries. The Agreement required the servicer to provide Plaintiff with monthly statements. A copy of the Second Position Loan Agreement and Promissory Note is attached as **("Exhibit 1, Granados Declaration")** Defendant CNB was also servicer of the Loan.

From 2005 to 2008, Plaintiff was an exemplary borrower and timely paid roughly 25 percent of the balance during this time. In 2008, the Great Recession hit the United States and the economy toppled.  As a result, in September 2010, Plaintiff was unable to maintain her monthly payments and defaulted on the loan. Defendant CNB thereafter accelerated the balance and declared the entire sum payable. During this time, Plaintiff and her former husband were separated, and Plaintiff filed for divorce in 2010. In 2011, Plaintiff's business went under.

On May 21, 2012, Plaintiff's former husband filed for Voluntary Chapter 13 Bankruptcy in the United States Bankruptcy Court- Northern District of California. Eventually, Plaintiff's former husband converted the bankruptcy into a Chapter 7. The second position loan with Defendant CNB was a scheduled debt in these proceedings. In addition, Plaintiff's former husband signed over the deed to the Subject Property in his petition., thereby making the

1  Subject Property the property of the Bankruptcy Estate. (*See* United States Bankruptcy Case

2  No. 12-44391.)

3          Beginning in December 2013, Plaintiff worked with Karen Mack, VP of Special Assets

4  with Defendant CNB, to secure a foreclosure alternative. By this time, Defendant CNB still

5  had not set a foreclosure sale date. Plaintiff was in close contact with Karen Mack for several

6  months, as she continuously submitted financial information to be considered for an

7  alternative. In addition, Karen Mack continuously agreed to delay the foreclosure action while

8  Plaintiff coordinated with her former husband's bankruptcy action. On May 15, 2014,

9  Defendant CNB denied Plaintiff's loan modification application, but Karen Mack stated that,

10  "At this time, until further notice, CNB has placed the foreclosure action on hold." **("Exhibit**

11  **2, Granados Declaration")**

12          Mr. Granados' Chapter 7 Bankruptcy was closed on November 21, 2014. On May 26,

13  2015, due to ongoing divorce proceedings with her former husband, Plaintiff needed

14  information about the loan with Defendant CNB. Plaintiff had stopped receiving monthly

15  statements from Defendant CNB and had not heard from Defendant CNB since November

16  2014. Still under the impression that Defendant CNB halted foreclosure action, Plaintiff asked

17  for an accounting on the loan. Karen Mack responded that she would be out of the office on

18  May 27, 2015. This was the last time Plaintiff heard from Karen Mack.

19          In 2017, Plaintiff and her former husband finalized their divorce. Mr. Granados deeded

20  the Subject Property to Plaintiff.

21          From May 27, 2015, to November 2022, Plaintiff wholly stopped receiving monthly

22  statements or any communication on the loan from Defendant CNB.  Plaintiff understood this

23  to mean that the loan was closed and was no longer accruing interest. Additionally, Plaintiff

24  received no future communication from **any** company regarding this loan.  Again, based on the

25  lack of monthly statements, she reasonably believed they did not actually owe a debt.

26          On November 30, 2022, after nearly eight years of no communication and no monthly

27  statements, Plaintiff received a notice that Defendant CNB had transferred servicing rights to

28

1  Defendant WHARTON. Plaintiff was stunned and terrified. This was the first she had ever

2  heard of Defendant WHARTON, as she never received communications about the existence of

3  the loan nor monthly statements. Additionally, this was the first she had heard of the Second

4  Position Loan since 2015.

5       On March 16, 2023, Defendant WHARTON recorded a Notice of Default on the

6  Subject Property and stated that the amount owed was $239,278.00. Contrary to her

7  understanding and unbeknownst to Plaintiff, Defendants charged principal and interest for

8  every month since 2015. Plaintiff could not comprehend that a debt she reasonably believed

9  was closed almost 8 years ago, would now suddenly reappear and come back to haunt her.  As

10  a result, Plaintiff now owes $239,278.00 in principal and interest that accrued on the loan when

11  no collection activity was occurring.

12       Defendants, through substantive and procedural irregularities of the non-

13  judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of

14  the Subject Property.  Because of Defendants' inexplicable delay in collecting, and

15  entire failure to communicate the Loan's status, Plaintiff incurred an enormous

16  debt, which includes penalties and interest on back dues that Plaintiff should

17  never have owed but for Defendants' conduct. Furthermore, Plaintiff incurred the

18  present costs and attorney fees to bring this action. The loan would not be in

19  default and the property would not be in foreclosure if not for Defendants' bad

20  faith tactics.

21  **III**.  **ARGUMENT**

22       Plaintiff requests injunctive relief because she faces the imminent recording of a Notice

23  of Trustee's Sale of her property in violation of California statutes and common law claims.

24  Plaintiff requests that this Court preserve the status quo pending hearing on Plaintiff's

25  application for a preliminary injunction. (Granny Goose Foods, Inc. v. Brotherhood of

26  Teamsters & Auto Truck Drivers (1974) 415 US 423, 439 [purpose of an injunction is to

27  preserve the status quo until the merits of the action can be determined].)

28

1    **1.    <u>Legal Standard</u>**

2        In general, the showing required for a temporary restraining order and a preliminary

3    injunction are the same.  <u>Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush &amp; Co., Inc.</u>, 240

4    F.3d 832, 839 n.7 (9th Cir. 2001).  The party requesting preliminary injunctive relief must show

5    that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

6    absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

7    is in the public interest."  <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7, 20 (2008);

8    <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting <u>Winter</u>).  The propriety

9    of an injunction hinges on a significant threat of irreparable injury that must be imminent in

10   nature.  <u>Caribbean Marine Serv. Co. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988).

11       Alternatively, under the sliding scale approach, as long as the Plaintiff demonstrates the

12   requisite likelihood of irreparable harm and show that an injunction is in the public interest, a

13   preliminary injunction may issue so long as serious questions going to the merits of the case are

14   raised and the balance of hardships tips sharply in Plaintiff's favor.  <u>Alliance for Wild Rockies</u>

15   <u>v. Cottrell</u>, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions"

16   version of the sliding scale test for preliminary injunctions remains viable after <u>Winter</u>).  In the

17   case at hand, an injunction should issue using either approach.

18   **2.    <u>Plaintiff Is Likely to Succeed on the Merits of Her Claims.</u>**

19   **A.    Plaintiff Is Likely to Succeed on Her Claim for Violation of the Federal Truth in Lending Act.**

20       The federal TILA requires a lender to provide monthly statements "transmitted to the

21   obligor" for each billing cycle in which there is an outstanding balance or imposition of

22   finance charges (15 U.S.C. § 1637(b); 12 C.F.R. § 1026.7) Defendants failed to transmit to

23   Plaintiff a <u>single monthly statement</u> since 2015. Each month that Defendants failed to provide

24   a billing statement when funds were due is a separate violation of this provision.

25       As a result of Defendants failure to communicate or transmit monthly statements for

26   over 8 years, Plaintiff could not have possibly known she owed an outstanding debt. Simply

27

28

putting Plaintiff on notice, would have spared her a decade of apparent unpaid debt. Therefore, Plaintiff is likely to succeed on this claim.

**B.** **Plaintiff Is Likely to Succeed on Her Claim for Breach of Contract.**

The elements for a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach of contract, and (4) resulting damages.

In the case at hand, the Deed of Trust sets forth the agreement between the parties and provides that Defendant send monthly statements to the borrower each month in which there is an outstanding debt.

Despite this provision, Defendant CNB failed to provide Plaintiff monthly statements since 2015, on or around the time her former husband's bankruptcy was closed. As a result, Plaintiff was unaware that Defendant CNB had not actually closed the loan file and was, instead, collecting interest on Plaintiff's loan and charging for late fees, penalties, and other fees due to the purported default on the loan. Therefore, Plaintiff is likely to succeed on a breach of contract claim.

**C.** **Plaintiff Is Likely to Succeed on Her Claim for Breach of Implied Covenant.**

Under California law, every contract or agreement contains an implied promise of good faith and fair dealing. (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658). This covenant not only creates an obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract, but also requires each party to refrain from unfairly interfering with the right of the other party to receive the benefits of the contract. (Id.)

As established above, Plaintiff was in a contractual relationship with Defendant CNB under the Original Deed of Trust and Defendant WHARTON under the Assignment ofDeed of Trust.

As such, Defendants had a contractual obligation to refrain from hindering Plaintiff's performance under the contract.

By failing to transmit a single monthly statement for almost 8 years and ceasing all collection activities until they recorded an NOD, Defendants allowed Plaintiff to reasonably believe she no longer owed a debt. As a result, Plaintiff did not make payments on the loan for over 8 years and unknowingly defaulted and accrued interest. Simply put, Defendants, through their own inaction, interfered with Plaintiff's ability to perform on the contract and thereby induced Plaintiff's breach. As a result of Defendant's breaches of covenant, Plaintiff faces the imminent loss of her Property. Therefore, Plaintiff is likely to succeed on the breach of implied covenant claim.

**D.     Plaintiff Is Likely to Succeed on Her Claim for Violation of FDCPA.**

The Fair Debt Collection Practices Act provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any, including use of a false representation of the character, amount, or legal status of any debt. <u>See</u> 15 U.S.C. § 1692e(2)

Pursuant to 15 U.S.C. § 1692a(6), Defendants are debt collectors because they regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another.

Plaintiff is informed and believes that, despite seemingly forgiving Plaintiff's loan and leading her to believe the loan no longer existed, Defendant considered Plaintiff's loan in default since in or around 2015, prior to when Defendants began making collection demands on the loan.

The FDCPA outlaws the following collection practices: making a false representation about the character, amount, or legal status of a debt (15 U.S.C. § 1692e(A)(2)), threatening to take action that cannot be legally taken (15 U.S.C. § 1692e(A)(5)), using a false representation to attempt to collect the debt (15 U.S.C. § 1692e(A)(10); and attempting to collect an amount not expressly authorized by the loan agreement (15 U.S.C. § 1692f(1)).

In the case at hand, Defendants violated each of these provisions by misstating the amount of Plaintiff's original loan and the amount that could legally be collected under the loan agreement, threatening to foreclose on Plaintiff's home pursuant to a Deed of Trust for a loan that has been forgiven, and attempting to collect amounts not permitted under the Deed of

7

Trust. Defendants are misstating the amount owed because they considered the loan in default over 10 years ago but did not begin collection activities until <u>far after</u> the loan reached its maturity date.

     **E.**     **Plaintiff Is Likely to Succeed on Her Claim for Violation of 12 C.F.R. 1026.39.**

Pursuant to 12 C.F.R. 1024.39, "a servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent."

In the present case, Defendants wholly failed to establish or attempt live contact whatsoever with Plaintiff regarding the delinquency on the loan in accordance with the statute. The first communication Plaintiff received from Defendants about the delinquency <u>was a Notice of Default over a year past the loan's original maturity date</u>—which is more than 8 years since Plaintiff last heard or thought about the Loan.

A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).Pursuant to 12 U.S.C. 2605(f), whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the sum of any actual damages to the borrower as a result of the failure and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.  Plaintiff is also entitled to injunctive relief to enjoin the violation of this statute.

     **F.**     **Plaintiff Is Likely to Succeed on Her Claim for Violation of 12 CFR 1026.41.**

Pursuant to 12 C.F.R. 1026.41, a servicer shall provide the consumer for each billing cycle a period statement meeting the requirements of this section.  In the present case, Defendants failed to provide Plaintiff with <u>any monthly billing statements</u>.  Furthermore, this section provides that, once a loan is charged off, interest shall not accrue on said loan.  A

borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)) and is entitled to injunctive relief to enjoin violation of this statute.

### G. Plaintiff Is Likely to Succeed on Her Claim for Violation of Unfair Competition.

Defendant's conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq. California Business and Professions Code § 17200 et seq. incorporates and provides a basis for enforcement of violations of other statutes and laws and those violations as a business practice.

Specifically, Defendant's violations of federal law and common law constitute unfair business practices in violation of California Business and Professions Code § 17200 et seq. As a result of Defendant's wrongful conduct, Plaintiff suffered various injuries according to proof at trial, including but not limited to the imminent loss of her home. Plaintiff seeks injunctive relief enjoining Defendant from engaging in the unfair business practices described herein.

### 3. Plaintiff Will Suffer Irreparable Harm in the Absence of this Relief.

Plaintiff has established that irreparable injury is not only likely, but also imminent, if this injunction does not issue. Irreparable injury is an injury "that is not accurately measurable or adequately compensable by money damages." (Ross-Simons of Warwick, Inc. v. Baccarat, Inc., (1st Cir. 1996) 102 F.3d 12, 18).) California law presumes that real property is unique and not easily interchangeable. (Real Estate Analytics, LLC v. Vallas (2008) 160 Cal.App.4th 463, 464; Cal. Civ. Code § 3387; Wheat v. Thomas (1930) 209 Cal. 306.) In fact, under California law, a foreclosure sale on a person's home is conclusively an irreparable harm. (See Wheat v. Thomas (1930) 209 Cal. 306; Cal. Civ. Code § 3387.) As such, if foreclosure activities continue, Plaintiff stands to suffer irreparable harm. Specifically, Defendants intend to foreclose on Plaintiff's home of over 20 years. Therefore, allowing Defendant to proceed with foreclosure on Plaintiff's Property in clear violation of these laws would result in an irreparable harm to Plaintiff.

### 4. The Balance of Hardships Overwhelmingly Favors Plaintiff.

9

It is well settled that in considering an injunction request, the court should look to the balance of injury and inconvenience and consider whether a greater injury will be done by granting than by refusing an injunction. (Contra Costa Water Co. v. Oakland, (1904) 165 F. 518, 533.) The trial court's discretion to grant or deny a preliminary injunction should be exercised in favor of the party most likely to be injured. (Andrews v. San Bernardino, (Cal. App. 4th Dist., 1959) 175 Cal App 2d 459, 463.) As the law presumes that the loss of real property constitutes irreparable injury, the balance of hardships overwhelmingly favors Plaintiffs. Plaintiff stands to lose title to their property after Defendant's blatant violations of California statutes and common law. As such, Plaintiffs stand to suffer irreparable harm. On the other hand, Defendants face minimal hardship beyond the mere inability to foreclose.

**5.     The Relief Requested is in the Best Interest of the Public.**

Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (Winter v. NRDC, Inc., (2008) 555 U.S. 7, 24.) The Legislature expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost. (Jolley at 903 (citing Cal. Civ. Code § 2923.6).) The provisions were adopted to greatly encourage lenders and loan servicers to engage in good faith negotiations. (Id.). Given the foregoing, Defendant's repeated violations cannot be rewarded, as it violates public policy. Further, not issuing the relief requested could result in the statutes having no legal effect and, thus, not protecting the public interests involved.

**IV.     CONCLUSION**

For the reasons set forth herein, good cause exists to grant the instant ex-parte application and restrain Defendants from foreclosing on Plaintiff's property.

DATED: April 19, 2023                     Respectfully submitted,

                                          SHAPERO LAW FIRM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

*Jessica Adair*
_____

Sarah Shapero
Jessica Adair
Attorneys for Plaintiff
ELIZABETH GRANADOS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

1 Sarah Shapero (Bar No. 286748)
Jessica Adair (Bar No. 348364)
2 SHAPERO LAW FIRM
100 Pine St., Ste. 530
3 San Francisco, CA 94111
Telephone:    (415)273-3504
4 Facsimile:    (415)273-3508

5 Attorneys for Plaintiff,
ELIZABETH GRANADOS

6

7                    **SUPERIOR COURT OF CALIFORNIA**

8                 **FOR THE COUNTY OF CONTRA COSTA**

9 ELIZABETH GRANADOS, an individual;        Case No.:   C23-00857

10               Plaintiff,                 **DECLARATION OF ELIZABETH
                                            GRANADOS IN SUPPORT OF**
11       v.                                 **MOTION FOR PRELIMINARY
                                            INJUNCTION**
12 CITY NATIONAL BANK, a corporation,
WHARTON NOTE COMPANY, a corporation
13 and DOES 1-50, inclusive,                Date:
                                            Time:
14       Defendants.                        Dept:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
DECLARATION OF ELIZABETH GRANADOS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

I, ELIZABETH GRANADOS, declare and state:

1.      I am the named Plaintiff in the above-entitled action. I have personal knowledge of the following facts and, if called as a witness I could, and would, competently testify as to their veracity.

2.      I am the rightful and lawful owner of real property commonly known as 90 Madera Court, Danville CA 94526 ("Subject Property"), and it is my personal and principal residence.

3.      I purchased the property on October 25, 2000, with my former husband, Brian V. Granados. The deed was in Mr. Granados' name, and we placed the Property into a trust.

4.      On January 27, 2005, I obtained a second-position mortgage in the amount of $120,000 at an Interest Rate 7.75% from Defendant CNB and concurrently executed a Deed of Trust as Security for the Note. The Note listed the "Borrower" as ELIZABETH GRANADOS. The Deed of Trust listed Brian V. Granados and Elizabeth Granados, Trustees of The Granados Revocable Living Trust as beneficiaries.

5.      The Agreement required the servicer to provide me with monthly statements. A copy of the Second Position Loan Agreement and Promissory Note is attached as **("Exhibit 1.")** Defendant CNB was also servicer of the Loan.

6.      From 2005 to 2008, I was an exemplary borrower and timely paid roughly 25 percent of the balance during this time.

7.      In 2008, the Great Recession hit the United States and the economy toppled. As a result, in September 2010, I was unable to maintain my monthly payments and defaulted on the loan. Defendant CNB thereafter accelerated the balance and declared the entire sum payable. During this time, my former husband and I were separated, and I filed for divorce in 2010.

8.      In 2011, my business went under.

9.      On May 21, 2012, my former husband filed for Voluntary Chapter 13 Bankruptcy in the United States Bankruptcy Court- Northern District of California. Eventually, my former husband converted the bankruptcy into a Chapter 7. The second position loan with Defendant CNB was a scheduled debt in these proceedings. In addition, my former husband signed over the deed to the

Doc ID: 264614d1b37eeb63df971c592fa49c1eed8cda8c

1  Subject Property in his petition, thereby making the Subject Property the property of the

2  Bankruptcy Estate. (*See* United States Bankruptcy Case No. 12-44391.)

3  10.     Beginning in December 2013, I worked with Karen Mack, VP of Special Assets with

4  Defendant CNB, to secure a foreclosure alternative. By this time, Defendant CNB still had not set

5  a foreclosure sale date. I was in close contact with Karen Mack for several months, as I

6  continuously submitted financial information to be considered for an alternative. In addition,

7  Karen Mack continuously agreed to delay the foreclosure action while I coordinated with my

8  former husband's bankruptcy action.

9  11.     On May 15, 2014, Defendant CNB denied my loan modification application, but Karen

10  Mack stated that, "At this time, until further notice, CNB has placed the foreclosure action on

11  hold." **("Exhibit 2")**

12  12.     Mr. Granados' Chapter 7 Bankruptcy was closed on November 21, 2014.

13  13.     On May 26, 2015, due to ongoing divorce proceedings with my former husband, I needed

14  information about the loan with Defendant CNB. I had stopped receiving monthly statements

15  from Defendant CNB and had not heard from Defendant CNB since November 2014. Still under

16  the impression that Defendant CNB halted foreclosure action, I asked for an accounting on the

17  loan. Karen Mack responded that she would be out of the office on May 27, 2015. This was the

18  last time I heard from Karen Mack.

19  14.     In 2017, my former husband and I finalized our divorce. Mr. Granados deeded the Subject

20  Property to me.

21  15.     From May 27, 2015, to November 2022, I wholly stopped receiving monthly statements

22  or any communication on the loan from Defendant CNB.  I understood this to mean that the loan

23  was closed and was no longer accruing interest. Additionally, I received no future communication

24  from **any** company regarding this loan.  Again, based on the lack of monthly statements, I

25  reasonably believed I did not actually owe a debt.

26  16.     On November 30, 2022, after nearly eight years of no communication and no monthly

27  statements, I received a notice that Defendant CNB had transferred servicing rights to Defendant

28  WHARTON. I was stunned and terrified. This was the first I had ever heard of Defendant

Doc ID: 264614d1b37eeb63df971c592fa49c1eed8cda8c

WHARTON, as I never received communications about the existence of the loan nor monthly statements. Additionally, this was the first I had heard of the Second Position Loan since 2015.

17. On March 16, 2023, Defendant WHARTON recorded a Notice of Default on the Subject Property and stated that the amount owed was $239,278.00. Contrary to my understanding and unbeknownst to me, Defendants charged principal and interest for every month since 2015. I could not comprehend that a debt I reasonably believed was closed almost 8 years ago, would now suddenly reappear and come back to haunt me. As a result, I now owe $239,278.00 in principal and interest that accrued on the loan when no collection activity was occurring.

18. I will face imminent irreparable harm, as I stand to lose my home of over 20 years.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California and the United States of America.

Executed April 19, 2023.

_____
ELIZABETH GRANADOS

4

Doc ID: 264614d1b37eeb63df971c592fa49c1eed8cda8c

# EXHIBIT 1

Recording Requested By And

When Recorded Mail To:
**City National Bank**
**831 S. Douglas Street, #107**
**El Segundo, Ca. 90245**
**Attention: Olivia Reed**
711139.00003

Space Above This Line for Recorder's Use

A.P.N. **218-252-001**

## DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust and Assignment of Rents (hereafter, "Deed of Trust") is made this **27th** day of **January 2005**, between **Brian Valentino Granados, who acquired title as Brian V. Granados and Elizabeth Granados, Trustees of The Granados Revocable Living Trust, dated September 25, 1998**, herein called **TRUSTOR**, whose address is **90 Madera Court, Danville California 94526**, **Chicago Title Insurance Company**, a California corporation herein called **TRUSTEE**, and **City National Bank**, a national banking association, herein called **BENEFICIARY**.

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in **Contra Costa County, City of Danville**, California described as:

**Lot 27, as delineated upon that certain Map entitled, "Subdivision 3537, Portion of San Ramon, County of Contra Costa, California", filed for record in the Office of the Recorder of the County of Contra Costa, State of California, On December 29, 1967, in Book 118 of Maps, at Page(s) 30 to 36.**

Property also known as: **90 Madera Court, Danville, California 94526**

TOGETHER WITH an absolute assignment of the leases, rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

This Deed of Trust is made for the purpose of securing:

1.      Performance of each agreement of Trustor herein contained, and repayment of any funds advanced by or which Beneficiary or Trustee become obligated to advance under this Deed of Trust.

2.      Payment of the indebtedness evidenced by one promissory note dated **January 27, 2005**, and any extensions or renewals thereof, in the principal sum of **$120,000.00** executed by **Elizabeth Granados** in favor of Beneficiary or order.

3.      Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by a promissory note or notes reciting it is so secured.

**To Protect the Security of This Deed of Trust, Trustor Agrees as Follows:**

4.      Trustor shall, with respect to the property described in this Deed of Trust:

4.1      Keep said property in good condition and repair;

4.2      Not remove or demolish any building or other structure;

4.3      Complete or restore promptly and in good and workmanlike manner any building or other structure which may be constructed, damaged or destroyed and pay when due all claims for labor performed and materials furnished therefor;

4.4      Comply with all laws affecting said property or requiring any alterations or improvements to be made thereon;

4.5      Not commit, suffer or permit waste;

4.6      Not commit, suffer or permit any act upon such property in violation of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to hazardous or toxic waste;

4.7      Cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the property may be reasonably necessary to maintain its value, the specific enumerations herein not excluding the general;

4.8      Provide, maintain and deliver to Beneficiary such evidence of insurance coverage as is satisfactory to and with loss payable to Beneficiary.

4.9      Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

4.10      Pay at least ten (10) days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock;

4.11      Pay when due, all encumbrances, charges and liens which appear to be prior or superior to the lien created by this Deed of Trust, together with any interest, costs or other sums secured thereby;

4.12      Cure within the time specified in any lease or sublease, or immediately if not specified, any defaults or breaches thereof and do all acts necessary to insure that any such lease or sublease remain in full force and effect;

4.13      With respect to any property described above which is less than a fee-simple estate, including but not limited to a leasehold estate:

      4.13.1      Trustor shall cure within the time specified in the above-described lease, or other agreement, or immediately if not specified therein, any default or breaches thereof and to do all acts necessary to insure the above-described lease or other agreement remains in full force and effect;

      4.13.2      Trustor shall not voluntarily terminate, surrender or subordinate any leasehold or other estate encumbered hereby and any attempt by Trustor to do so shall be wholly void and without any force and effect.

5.      Trustor covenants and agrees that to effectuate the terms and conditions of this Deed of Trust:

5.1      Trustor shall, upon reasonable notice by Beneficiary, during normal business hours or at such other time if reasonably required, permit Beneficiary, and any of its agents or employees to inspect the property and copy such records of Trustor that pertain to the property, whether or not located at the property.

5.2      Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:  make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.  Trustor shall pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount set forth in the promissory note secured hereby, or if the obligation secured hereby does not specify a rate of interest, at a rate of interest equal to the Beneficiary's Prime Rate as it may exist from time to time plus five percent (5.0%) but in no event less than ten percent (10.0%) per annum.

5.3      Trustor agrees to indemnify and hold Beneficiary, and any of its successors in interest, harmless from any waste or violations of law, including but not limited to all Federal, state and local statutes, ordinances or regulations relating to hazardous or toxic wastes.

5.4     Any award of damages in connection with any condemnation for public use of or injury to said property is hereby assigned and shall be paid to Beneficiary who shall apply said moneys in reduction of the principal amount of the indebtedness secured to the extent necessary to render its security unimpaired.  If the obligation secured hereby includes obligations to reimburse the Beneficiary for moneys the Beneficiary is committed to advance to Trustor or third persons in the future, said award of damages shall be held as collateral for such reimbursement obligation in lieu of the property which is condemned.  In the event of a partial taking in condemnation, the proceeds shall be apportioned in accord with the provisions of California Code of Civil Procedure Section 1265.225, as it is in effect at the time of the award.  An action for inverse condemnation shall be deemed an action for condemnation under this paragraph.

5.5     Insurance proceeds shall be held, in trust, by Beneficiary and applied to the reasonable costs of repair and restoration of the property if such proceeds, together with funds supplied by Trustor, are sufficient to restore the property in such a manner that the Beneficiary's security interest hereunder remains unimpaired.  If the insurance proceeds, together with funds supplied by Trustor, are not sufficient to restore the property in such a manner that the Beneficiary's security interest hereunder remains unimpaired, said proceeds, at the option of Beneficiary, may be applied to the obligation secured hereby or to restoration of the property.  If Trustor disagrees with Beneficiary's disposition of insurance proceeds hereunder, Trustor agrees to submit the matter to binding arbitration before a three-member panel (or one-member panel if the insurance proceeds are less than $200,000) of the American Arbitration Association pursuant to the rules and regulations of the American Arbitration Association.  The arbitrators shall also apportion the costs of arbitration, including attorneys' fees, to the extent each party has prevailed.

6.      As additional security, Trustor hereby gives to, confers upon and absolutely assigns to Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.  The absolute assignment of rents, issues and profits contained in this Deed of Trust constitutes a present transfer of Trustor's interest in existing and future rents, issues and profits with respect to the property described in this Deed of Trust effective upon the execution and delivery of this Deed of Trust.

7.      Trustor or any other person legally entitled thereto agrees to pay $30.00 for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby.

8.      Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

9.      At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the evidence of the obligation secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may:  reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

10.     Upon written request of Beneficiary stating that all sums secured hereby have been paid, if applicable, Beneficiary's statement that no further commitment exists to make future advances or extend credit, and upon surrender of this Deed of Trust and the evidence of the obligation secured hereby to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.  Upon written request of Beneficiary, if less than all sums secured hereby have been paid, Trustee shall reconvey, without warranty, the portion of the property then held hereunder specified by Beneficiary.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."  Five (5) years after issuance of such full reconveyance, Trustee may destroy the evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

11.     Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and

demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the evidence of the obligation secured hereby and all documents evidencing expenditures secured hereby.

To the extent the obligation secured hereby arises from a commitment of Beneficiary to make future advances either to Trustor or a third party or extend credit subsequent to the recordation of a notice of default hereunder, the sums secured hereby shall also include the amount of such commitment to make future advances or extend credit, and subject to acceleration as provided in the previous paragraph. The Trustee shall pay such amount at such time as it pays all other sums secured hereby and the Beneficiary shall hold same as additional collateral for the obligation secured hereby, at such interest as is available to Beneficiary's customers in an insured deposit account with no restrictions on withdrawal.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.

If said property consists of more than one lot or parcel, the lots or parcels may be sold separately, together or in any combination, at the sole discretion of the Beneficiary. Trustor waives the right to direct the order in which said property may be sold when it consists of more than one lot or parcel. The order of sale of said property when it consists of more than one lot or parcel shall be at the sole discretion of the Beneficiary.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

12.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the evidence of the obligation secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

13.    That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

14.    With respect to any Trustor under this Deed of Trust who is not obligated to repay the indebtedness referred to in Paragraph 2 above, such Trustor:

14.1    Authorizes Beneficiary without notice or demand and without affecting the security granted hereunder, from time to time to renew, compromise, extend, accelerate or otherwise change the time for payment of or otherwise change the terms of the indebtedness secured hereby, or any part thereof, including increase or decrease of the rate of interest thereon;

14.2    Waives any right to require Beneficiary to proceed against the persons liable for the indebtedness secured by this Deed of Trust, to proceed against or exhaust any other security securing the obligations secured by this Deed of Trust or to pursue any other remedy in Beneficiary's power whatsoever;

14.3    Waives any defense arising by reason of any disability, other defense, or the cessation from any cause whatsoever of the liability of any person liable for the indebtedness secured hereby.

14.4    Waives all such Trustor's rights and defenses described in Civil Code §2856(a).

Until all indebtedness secured by this Deed of Trust shall have been paid in full, and no commitment on the part of the Beneficiary to make future advances or extend credit either to Trustor or a third party exists, Trustor shall have no right of subrogation, and waives any right to enforce any remedy which Beneficiary now has or may hereafter have against any person liable for the indebtedness secured hereby, and waives any benefit of, any right to participate in any security now or hereafter held by Beneficiary and without limiting the generality of the foregoing, Trustor specifically waives and relinquishes as against Beneficiary any defense or benefit otherwise available to Trustor should Beneficiary make an election of remedies as against any person liable for the indebtedness secured hereby (and irrespective of the circumstances or manner in which or whereby such election is made) which destroys or impairs Trustor's subrogation rights or rights to proceed against any person liable for the indebtedness secured hereby for reimbursement. Trustor assumes the responsibility for being and keeping himself informed of the financial condition of any person liable for the indebtedness secured hereby and of all other circumstances bearing upon the risk of nonpayment of the indebtedness secured hereby which diligent inquiry would reveal, and agrees that Beneficiary shall have no duty to advise Trustor of information known to it regarding such condition or circumstances.

SHOULD THE TRUSTOR OR HIS SUCCESSOR IN INTEREST WITHOUT THE PRIOR WRITTEN CONSENT OF THE BENEFICIARY SELL, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATE, ASSIGN OR ENCUMBER HIS INTEREST IN THE PROPERTY (OR ANY PART THEREOF), WHETHER VOLUNTARILY OR INVOLUNTARILY, THEN BENEFICIARY MAY AT ITS ELECTION DECLARE ALL SUMS SECURED HEREBY IMMEDIATELY DUE AND PAYABLE. THIS PROVISION SHALL APPLY TO EACH AND EVERY SALE, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATION, ASSIGNMENT OR ENCUMBRANCE REGARDLESS WHETHER OR NOT BENEFICIARY HAS CONSENTED TO, OR WAIVED, ITS RIGHT HEREUNDER, WHETHER BY ACTION OR NON-ACTION, IN CONNECTION WITH ANY PREVIOUS SALE, TRANSFER, MORTGAGE, PLEDGE, HYPOTHECATION, ASSIGNMENT OR ENCUMBRANCE, WHETHER ONE OR MORE.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor:

_____

Brian Valentino Granados, Trustee of The Granados Revocable Living Trust, dated September 25, 1998

_____

Elizabeth Granados, Trustee of The Granados Revocable Living Trust, dated September 25, 1998

# EXHIBIT 2

# RE: Your CNB Loans

From: Mack, Karen (karen.mack@cnb.com)

To: lizssmail@yahoo.com

Date: **Thursday, May 15, 2014 at 03:18 PM PDT**

Dear Liz,

After review of the financials you provided as well as the appraised value of your residence that secures your City National Bank (CNB) loans, attached above is CNB's denial of your loan modification requests. A copy of each letter will also be mailed to your attention. At this time and until further notice, CNB has placed the foreclosure action on hold.

Please feel free to contact me should you have any questions concerning this matter.

Sincerely,

**Karen Mack, VP** | Special Assets | **CITY NATIONAL BANK** | Loan Origination ID #589163
555 South Flower St, 16th Fl | Los Angeles, CA 90071
T: 213.673.8953 | F: 213.673.8958 | karen.mack@cnb.com

Visit us at www.cnb.com

The foregoing is neither an offer nor acceptance concerning any existing agreement. No offer or acceptance is valid as against the Bank unless signed in ink by an authorized officer of the Bank. No email from the Bank shall be deemed to constitute an offer or acceptance concerning any agreement. The Bank intends that there shall be no claims of estoppel and that no person shall change position in reliance upon this correspondence. Nothing in this correspondence is to be construed as a waiver, limitation, or release of any and all rights and remedies of the Bank.

CAUTION - CONFIDENTIAL
The information contained in this email transmission, and any attachments thereto, is intended solely for the named addressee(s) and may contain privileged or confidential information. If you have received this e-mail in error or are not otherwise an intended recipient, please do not use or distribute this e-mail or its contents, notify me at once by return e-mail or telephone and delete or destroy this e-mail and any copies.

XX2837-1_Granados_02464e_NAA_5.15.14.pdf
40kB

XX1139-3_Granados_02464e_NAA_5.15.14.pdf
40kB

*see denial of loan modification requests in "Documents" packet*

Sarah Shapero (Bar No. 281748)
Jessica Adair (Bar No. 348364)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, CA 94111
Telephone:   (415) 273-3504
Facsimile:   (415) 358-4116

Attorneys for Plaintiff,
ELIZABETH GRANADOS

Electronically Received by
Superior Court of California,
Contra Costa County
4/19/2023 3:01 PM
By: A. Stewart, Deputy

# SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| ELIZABETH GRANADOS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>CITY NATIONAL BANK, a corporation, WHARTON NOTE COMPANY, a corporation and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: C23-00857<br><br>**[PROPOSED] ORDER**<br><br>Date:<br>Time:<br>Dept: |

The Motion for Preliminary Injunction came on before the undersigned on May_____, 2023 in Department _____ of the above-captioned court.

Based on the Application, Points and Authorities, and supporting declarations in the moving papers, and good cause having been shown, the Court finds that Plaintiff has shown good cause for issuance of a Preliminary Injunction. The Court hereby grants Plaintiff's Preliminary Injunction Motion to restrain the recording of the Notice of Trustee's Sale of the property located at 90 Madera Court, Danville CA 94526, until further order by this Court.

**IT IS SO ORDERED.**

Dated: _____        _____
                                Honorable Superior Court Judge

1

Sarah Shapero (Bar No. 281748)
Jessica Adair (Bar No. 348364)
SHAPERO LAW FIRM
100 Pine St., Ste. 530
San Francisco, CA 94111
Telephone:   (415) 273-3504
Facsimile:    (415) 273-3508

Attorney for Plaintiff,
ELIZABETH GRANADOS

# SUPERIOR COURT OF CALIFORNIA

# FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| ELIZABETH GRANADOS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>CITY NATIONAL BANK, a corporation, WHARTON NOTE COMPANY, a corporation and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: C23-00857<br><br>**PROOF OF SERVICE**<br><br>Date:<br>Time:<br>Dept: |

1

**PROOF OF SERVICE**

2  STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

3       I am employed in the County of San Francisco, State of California. I am over the age of 18

   and not a party to the within action. My business address is 100 Pine St., Ste. 530, San Francisco,

4  CA 94111.

5       On April 19, 2023, I served the foregoing document described as:

6

7  -   **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
       INJUNCTION**
8  -   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
       FOR PRELIMINARY INJUNCTION**
9  -   **DECLARATION OF ELIZABETH GRANADOS IN SUPPORT OF MOTION FOR
       PRELIMINARY INJUNCTION**
10 -   **[PROPOSED] ORDER**

11 On all interested parties in this action by email as stated on the following parties:

12
   -   City National Registered Agent:
13      555 Flower St
        Los Angeles, CA 90012
14

15 -   Wharton Note Company Registered Agent:
        30 N Gould St
16      Sheridan, WY 82801

17      **[X] VIA U.S. MAIL.**

18 I declare under penalty of perjury under the laws of the State of California that the above is true
   and correct.  Executed on April 19, 2023 at San Francisco, California.
19

20                                              *Mary Lynch*
                                          _____
21                                              MARY LYNCH

22

23

24

25

26

27

28

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Sarah Shapero, 281748<br>Shapero Law Firm<br>100 Pine St., Ste. 530<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415)273-3504<br>ATTORNEY FOR *(Name):* | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF | |
|---|---|
| Superior Court of California, Contra Costa County<br>725 Court Street, P.O. Box 911<br>Martinez, CA 94553-1233 | |

| PLAINTIFF/PETITIONER: ELIZABETH GRANADOS | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CITY NATIONAL BANK. et al. | C23-00857 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons; Complaint; Civil Case Cover Sheet

3. a. Party served: CITY NATIONAL BANK, a corporation

   b. Person Served: - Person Authorized to Accept Service of Process

4. Address where the party was served: 555 Flower St
   Los Angeles, CA 90012

5. I served the party
   b. **by substituted service.** On (date): 04/18/2023    at (time): 2:15PM    I left the documents listed in item 2 with or
   in the presence of: Crystal Ewell - Litigation Paralegal - Custodian of Records
       (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the
       person to be served. I informed him or her of the general nature of the papers.
       (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:
   CITY NATIONAL BANK, a corporation

   under:    CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:    Jessica Brown
   b. Address:    One Legal - P-000618-Sonoma
              1400 North McDowell Blvd, Ste 300
              Petaluma, CA 94954
   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 156.00
   e. I am:
       (3) registered California process server.
         (i) Employee or independent contractor.
         (ii) Registration No. 2019217220
         (iii) County Los Angeles

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 04/19/2023

Jessica Brown

| (NAME OF PERSON WHO SERVED PAPERS) | (SIGNATURE) |
|---|---|

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| Sarah Shapero, 281748<br>Shapero Law Firm<br>100 Pine St., Ste. 530<br>San Francisco, CA 94111 | (415)273-3504 | |

ATTORNEY FOR *(Name):*

Insert name of court, judicial district or branch court, if any:

Martinez
725 Court Street, P.O. Box 911
Martinez, CA 94553-1233

PLAINTIFF:

ELIZABETH GRANADOS

DEFENDANT:

CITY NATIONAL BANK, et al.

| **PROOF OF SERVICE BY MAIL** | | | | CASE NUMBER:<br>C23-00857 |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 04/19/2023, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Summons; Complaint; Civil Case Cover Sheet

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

CITY NATIONAL BANK, a corporation

555 Flower St

Los Angeles, CA 90012

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 156.00

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 04/19/2023 at Petaluma, California.

One Legal - P-000618-Sonoma

1400 North McDowell Blvd, Ste 300

Petaluma, CA 94954



Sandra Alcala

OL# 20217019

1 JENNIFER WITHERELL CRASTZ (SBN 185487)
JACQUELINE L. JAMES (SBN 198838)
2 **HEMAR, ROUSSO & HEALD, LLP**
3 15910 Ventura Blvd., 12th Floor
Encino, California 91436
4 Tel.: (818) 501-3800
Fax: (818) 501-2985
5 Email: jcrastz@hrhlaw.com; jjames@hrhlaw.com

6 Attorneys for Defendant
7 CITY NATIONAL BANK

8

9

10

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF CONTRA COSTA**

| | |
|---|---|
| 11 ELIZABETH GRANADOS, | CASE NO. C23-00857 |
| 12 Plaintiff, | **ANSWER TO COMPLAINT** |
| 13 vs. | |
| 14 | |
| 15 | |
| 16 CITY NATIONAL BANK, a corporation; WHARTON NOTE COMPANY, a corporation; | |
| 17 and DOES 1-50, inclusive, | |
| 18 Defendants. | |

19

20     COMES NOW Defendant CITY NATIONAL BANK ("CNB") and answers the Complaint of

21 Plaintiff ELIZABETH GRANADOS ("Plaintiff"), as follows:

**GENERAL DENIAL**

22

23     Pursuant to Code of Civil Procedure §431.30, CNB denies, generally and specifically, each and

24 every allegation contained in Plaintiff's Complaint, and the whole thereof.

**AFFIRMATIVE DEFENSES**

25

26     As and for distinct and affirmative defenses to each and every purported cause of action

27 alleged in the Complaint, and the whole thereof, set forth in the following separate paragraphs, CNB

28 alleges:

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

The Complaint does not state facts sufficient to constitute a cause of action.

## SECOND AFFIRMATIVE DEFENSE

### (Failure to Perform)

Under the terms of the contract sued on, Plaintiff was obligated to perform her duties as a condition precedent to the performance of the contracting parties, and that Plaintiff has not performed all the terms and conditions of the contract on her part, therefore, there has been a failure of consideration barring recovery by Plaintiff.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims against CNB are barred by Plaintiff's unclean hands

## FOURTH AFFIRMATIVE DEFENSE

### (Release)

Plaintiff's actions constitute a full release and waiver by Plaintiff of any and all claims which Plaintiff may have, or which might thereafter arise, against CNB.

## FIFTH AFFIRMATIVE DEFENSE

### (Good Faith)

CNB is informed and believes that, at all times relevant, it acted reasonably and exercised good faith.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff is barred from recovery under the Complaint by virtue of her affirmative acts and failure to act upon which CNB relied to its detriment.

## SEVENTH AFFIRMATIVE DEFENSE

### (Breach by Plaintiff)

The contract sued upon, if any, was breached by Plaintiff, thus discharging CNB's obligation, if any, thereto.

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## EIGHTH AFFIRMATIVE DEFENSE

### (Comparative Fault of Plaintiff)

If Plaintiff sustained any damages as alleged in the Complaint, those damages were proximately caused and contributed by Plaintiff in failing to act in a manner ordinarily expected of reasonable prudent persons in the conduct of their affairs and business. Plaintiff's comparative fault bars or diminishes any recovery herein.

## NINTH AFFIRMATIVE DEFENSE

### (Negligence)

The matters complained of in the Complaint together with the alleged resulting injuries and/or damages as prayed for therein, if any, were legally caused and contributed to by Plaintiff's negligence and fault and/or by others whose conduct is imputed to Plaintiff, and through failure to exercise ordinary care in the performance of their duties, so the recovery by Plaintiff is diminished, or barred entirely, by the proportion of said negligence and fault.

## TENTH AFFIRMATIVE DEFENSE

### (Apportionment)

The matters complained of in the Complaint were proximately caused, in whole or in part, by the acts or omissions of a third party or parties or by Plaintiff. Accordingly, the liability of CNB and responsible parties, named or unnamed, should be apportioned and the liability, if any, of CNB should be reduced accordingly.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No Damages)

Plaintiff has sustained no damages by reason of the alleged misconduct of CNB.

## TWELFTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiff has engaged in conduct which constitutes a waiver of her rights under the contract alleged in the Complaint. By reason of such waiver, CNB is excused from further performance of the obligations under the alleged contract, if any.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Lawful Action)

The injuries allegedly suffered by Plaintiff were merely the result of a lawful effort of CNB to promote its own welfare.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Justification)

The acts or omissions complained of by Plaintiff were justified.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Privilege)

As a creditor of Plaintiff, CNB's conduct was proper and subject to privilege pursuant to the terms and conditions of the subject Note and Deed of Trust.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

If Plaintiff sustained any damage as alleged in the Complaint, that damage was proximately caused and contributed to by Plaintiff in failing to mitigate her damages. Plaintiff's failure to mitigate her damages bars or diminishes any recovery herein.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Lack of Duty)

As a creditor of Plaintiff, CNB did not owe a duty of care to Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Plaintiff Not Borrower Pursuant to Civ. Code § 2920.5)

Plaintiff is not a borrower as defined by Civil Code § 2920.5.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Frivolous Claim)

The Complaint, and each cause of action therein, is frivolous as to CNB.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiff lacks standing to bring the claims asserted in the Complaint.

**HEMAR, ROUSSO & HEALD, LLP**
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

### <u>TWENTY-FIRST AFFIRMATIVE DEFENSE</u>

### **(Impossibility)**

If it is determined that CNB has failed to perform one or more of its obligations under any contract or agreement described in the Complaint, performance of each obligation was executed due to impossibility or impracticability in each instance.

### <u>TWENTY-SECOND AFFIRMATIVE DEFENSE</u>

### **(Unstated Affirmative Defenses)**

CNB alleges that at this time it has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. CNB therefore reserves herein the right to assert additional affirmative defenses in the event that discovery indicates that they would be appropriate.

**WHEREFORE**, CNB requests entry of judgment as follows:

1. That Plaintiff take nothing by way of the Complaint from CNB;

2. For an award on behalf of CNB for its attorney fees and costs in an amount according to proof, if allowed under law;

3. For costs of suit; and

4. For such other and further relief as the Court may deem just and proper

Dated: May 17, 2023        HEMAR, ROUSSO & HEALD, LLP

BY: _____
        JENNIFER WITHERELL CRASTZ
        JACQUELINE L. JAMES
        Attorneys for Defendant,
        CITY NATIONAL BANK

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and am not a party to the within action or proceeding. I am employed by the law firm of Hemar, Rousso & Heald LLP, located at 15910 Ventura Blvd., 12th Floor, Encino, CA 91436.

On May 17, 2023, I served the foregoing document described as **ANSWER TO COMPLAINT** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

Attorney for Plaintiff
Sarah Shapero
Jessica Adair
SHAPERO LAW FIRM
100 Pine Street, Suite 530
San Francisco, CA 94111
jessica@shaperolawfirm.com
sarah@shaperolawfirm.com

☒ **By Mail (CCP §1013(a)&(b)):** I am readily familiar with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

☒ **Electronic Mail/Electronic Service (CCP §1010.6):** I electronically served a copy of the foregoing document(s) to the addressee(s) as stated above.

☐ **By Personal Service (CCP §1011):** I caused such envelope to be delivered by hand to the offices of the addressee.

☐ **By Federal Express/Express Mail (CCP §1013(c)&(d)):** I caused said document to be sent via Federal Express / Express Mail for next business day delivery.

☒ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ **(Federal)** I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made.

Executed on this 17th day of May, 2023, at Encino, California.

_____
MARY ANN GRANZOW

**Superior Court of California, Contra Costa County**

Department 12
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| MINUTE ORDER |
|---|

| ELIZABETH GRANADOS VS. CITY NATIONAL BANK | C23-00857 |
|---|---|
| | **HEARING DATE: 05/25/2023** |

PROCEEDINGS:   *HEARING ON MOTION IN RE: FORFEITURE OF FIREARM

| DEPARTMENT 12 | CLERK: DENESE JOHNSON |
|---|---|
| JUDICIAL OFFICER: CHARLES S TREAT | COURT REPORTER: NOT REPORTED |

JOURNAL ENTRIES:

No appearance either party.

There being no opposition to the tentative ruling, the tentative ruling becomes the order of the court as follows:

At the suggestion of plaintiff's counsel, this motion is **continued** to June 8 so that the defendant involved will have a chance to respond.  The Court asks for prompt notice if there will be a stipulation or the preliminary relief will not be opposed.

FUTURE HEARING(S):
JUNE 08, 2023 9:00 AM *HEARING ON MOTION IN RE: PRELIMINARY INJUNCTION

TREAT, CHARLES S

JOHNSON, DENESE

DEPARTMENT 12

DATED: 5/25/2023                    BY:_____

D.  JOHNSON, DEPUTY CLERK

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| **Sarah Shapero SBN 281748**<br>**Shapero Law Firm**<br>**100 Pine St Ste 530 530**<br>**San Francisco, CA 94111**<br>TELEPHONE NO.: **(415) 734-0151**   FAX NO. (Optional):<br><br>E-MAIL ADDRESS (Optional): **mary@shaperolawfirm.com**<br>ATTORNEY FOR (Name):   **Plaintiff** | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA - CENTRAL
  STREET ADDRESS: 725 Court St.
  MAILING ADDRESS: 725 Court St.
  CITY AND ZIP CODE: Martinez, CA 94553
  BRANCH NAME: SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA - CENTRAL

| PLAINTIFF/PETITIONER: ELIZABETH GRANADOS | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CITY NATIONAL BANK | C23-00857 |

| **PROOF OF SERVICE SUMMONS** | Ref. No. or File No.:<br>GRANADOS |
|---|---|

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.     BY FAX

2. I served copies of: *Complaint; Summons*

3. a. Party served (specify name of party as shown on documents served): *WHARTON NOTE COMPANY, a corporation*

   b. [×] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a): **Heather Hilton, Registered Agent**

4. Address where the party was served: *30 N Gould St ste n, N Sheridan, WY 82801*

5. I served the party (check proper box)
   a. [×] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: **5/17/2023** (2) at: **01:47 PM**
   b. [ ] **by substituted service.** On: at: I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

       (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
       (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3) [ ] **(physical address unknown)** a person of at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
       (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents:
           on: from: **or** [ ] a declaration of mailing is attached.

Page 1 of 3

POS-010 [Rev. January 1, 2007]     **PROOF OF SERVICE OF SUMMONS**

    (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5.    c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on:                             (2) from:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

       ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):* **WHARTON NOTE COMPANY, a corporation**
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☒ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
   a. Name: **Dustin Looper**
   b. Address: **P.O. Box 6384, Sheridan, WY 82801**
   c. Telephone number: **909-664-9577**
   d. **The fee** for service was: **$290.00**
   e. I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
        (i) ☐ owner   ☐ employee   ☒ independent contractor.
        (ii) Registration No.:
        (iii) County: **0**

| PLAINTIFF/PETITIONER: ELIZABETH GRANADOS | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CITY NATIONAL BANK | C23-00857 |

8.     ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



 

**Dustin Looper**         Date: **05/18/2023**

Department 12
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| MINUTE ORDER | |
|---|---|
| **ELIZABETH GRANADOS VS. CITY NATIONAL BANK** | **C23-00857** |
| | **HEARING DATE: 06/08/2023** |

PROCEEDINGS:   *HEARING ON MOTION IN RE: PRELIMINARY INJUNCTION

| | |
|---|---|
| DEPARTMENT 12 | CLERK: A. MONTGOMERY |
| JUDICIAL OFFICER: CHARLES S TREAT | COURT REPORTER: NOT REPORTED |

<u>JOURNAL ENTRIES:</u>

  - No appearance either party.
  There being no opposition to the tentative ruling, the tentative ruling becomes the order of the court as follows:

This motion is taken **off calendar** until the proper defendant can be brought into the case.

Plaintiff seeks a preliminary injunction against foreclosure.  Although City National Bank has been served, the preliminary injunction would operate against defendant Wharton.  In an e-mail to the Court two weeks ago plaintiff stated that Wharton had recently been served, but no such proof of service is in the Court's file, and Wharton has not appeared or responded.

Moreover, although Wharton has recorded a Notice of Default, there is no indication in the moving papers that a foreclosure is imminently threatened.

Once plaintiff files a proof of service on Wharton, and assuming that Wharton does not stipulate to interim relief, this motion can be placed back on calendar by a supplemental notice of motion.

DATED: 6/8/2023                           BY:_____

                                                          A.  MONTGOMERY, DEPUTY CLERK

# Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA 94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| CASE NAME:<br>ELIZABETH GRANADOS VS. CITY NATIONAL BANK | CASE NUMBER:<br>C23-00857 |
|---|---|

1. NOTICE IS HEREBY GIVEN THAT A CASE MANAGEMENT CONFERENCE IS SET IN THE ABOVE ENTITLED CASE AND WILL BE HELD IN THIS COURT ON:

| HEARING DATE:<br>08/11/2023 | HEARING TIME:<br>8:30 AM | HEARING LOCATION:<br>DEPARTMENT 12<br>725 COURT STREET  ROOM 301  MARTINEZ, CA 94553 |
|---|---|---|

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION SHEET, A BLANK CASE MANAGEMENT STATEMENT, AND A BLANK ADR CASE MANAGEMENT STIPULATION AND ORDER FORM ARE TO BE SERVED ON OPPOSING PARTIES.   ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY OF RECORD MUST APPEAR.

2. YOU MAY STIPULATE TO AN EARLIER CASE MANAGEMENT CONFERENCE. IF ALL PARTIES AGREE TO AN EARLY CASE MANAGEMENT CONFERENCE, PLEASE CONTACT THE COURT CLERK'S OFFICE AT (925)608-1000 FOR UNLIMITED CIVIL AND LIMITED CIVIL CASES FOR ASSIGNMENT OF AN EARLIER DATE.

3. YOU MUST BE FAMILIAR WITH THE CASE AND BE FULLY PREPARED TO PARTICIPATE EFFECTIVELY IN THE CASE MANAGEMENT CONFERENCE AND TO DISCUSS THE SUITABILITY OF THIS CASE FOR THE EASE PROGRAM, PRIVATE MEDIATION, BINDING OR NON-BINDING ARBITRATION, AND/OR USE OF A SPECIAL MASTER.

4. AT ANY CASE MANAGEMENT CONFERENCE THE COURT MAY MAKE PRETRIAL ORDERS INCLUDING THE FOLLOWING:
   a) AN ORDER ESTABLISHING A DISCOVERY SCHEDULE
   b) AN ORDER REFERRING THE CASE TO ARBITRATION
   c) AN ORDER TRANSFERRING THE CASE TO LIMITED JURISDICTION
   d) AN ORDER DISMISSING FICTITIOUS DEFENDANTS
   e) AN ORDER SCHEDULING EXCHANGE OF EXPERT WITNESS INFORMATION
   f) AN ORDER SETTING SUBSEQUENT CONFERENCE AND THE TRIAL DATE
   g) AN ORDER CONSOLIDATING CASES
   h) AN ORDER SEVERING TRIAL OF CROSS-COMPLAINTS OR BIFURCATING ISSUES
   i) AN ORDER DETERMINING WHEN DEMURRERS AND MOTIONS WILL BE FILED

## SANCTIONS

IF YOU DO NOT FILE THE CASE MANAGEMENT STATEMENT OR ATTEND THE CASE MANAGEMENT CONFERENCE OR PARTICIPATE EFFECTIVELY IN THE CONFERENCE, THE COURT MAY IMPOSE SANCTIONS (INCLUDING DISMISSAL OF THE CASE AND PAYMENT OF MONEY).

### SUPERIOR COURT OF CALIFORNIA, CONTRA COSTA COUNTY

I DECLARE UNDER PENALTY OF PERJURY THAT I AM NOT A PARTY TO THE WITHIN ACTION OR PROCEEDING; THAT ON THE DATE BELOW INDICATED, I SERVED A COPY OF THE FOREGOING NOTICE BY DEPOSITING SAID COPY ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID IN THE UNITED STATES MAIL AT MARTINEZ, CALIFORNIA AS INDICATED ABOVE.

DATE:   4/17/2023                          BY: _____

                                           T. JACOBSEN-RIOS, DEPUTY CLERK

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA 94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

NOTICE OF HEARING HAS BEEN PRINTED FOR THE FOLLOWING ATTORNEYS/FIRMS OR PARTIES FOR
CASE NUMBER: C23-00857 ON 4/17/2023:

SARAH SHAPERO
100 PINE ST
STE 530
SAN FRANCISCO CA 94111