1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7     ELIZABETH GRANADOS,                    Case No. 23-cv-02948-HSG
8                    Plaintiff,              **ORDER GRANTING APPLICATION**
                                             **FOR TEMPORARY RESTRAINING**
9              v.                            **ORDER**
10    WHARTON NOTE COMPANY,                  Re: Dkt. No. 17
11                   Defendant.
12
13          Pending before the Court is Plaintiff Elizabeth Granados's *ex parte* application for a
14    temporary restraining order ("TRO").  Dkt. No. 17.  The Court finds this matter appropriate for
15    disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).
16    Although the Court has serious concerns that Plaintiff's counsel has manufactured the time-
17    sensitivity of this application, the Court nevertheless **GRANTS** the application to ensure the status
18    quo for the limited time necessary to ensure a fulsome review of the merits.
19    I.    BACKGROUND
20          A.    Procedural Background
21          On Friday, July 21, 2023, at 10:52 a.m., Plaintiff filed this *ex parte* application, seeking to
22    enjoin the foreclosure sale of the property located at 90 Madera Court, Danville, California 94526.
23    *See* Dkt. No. 17.  The requested TRO would enjoin Defendant Wharton Note Company from
24    foreclosing on the property as scheduled on Wednesday, July 26, 2023.  *See id.*  Despite her
25    acknowledgment that she knew about the foreclosure since at least June 30, 2023, *see* Dkt. No. 17-
26    1 at 4, Plaintiff waited until the eve of the foreclosure to file this application.  Plaintiff then
27    proceeded to demand that Defendant file its response within 24 hours.  *See* Dkt. No. 17-3 at ¶ 2.
28    As the Court already explained, such a demand is simply unreasonable.  *See* Dkt. No. 18.   The

United States District Court
Northern District of California

1    Court granted Defendant until Tuesday, July 25, to file its opposition.  *See* Dkt. No. 19.  It appears

2    highly likely that Plaintiff waited until days before the foreclosure to file this application to gain a

3    tactical advantage in this case.  Plaintiff's actions—and those of her counsel—have come at the

4    expense of the Court's own time and resources, and are unacceptable.

5        **B.    Factual Allegations**

6        In the amended complaint, Plaintiff urges that Defendant is wrongfully seeking to

7    foreclose on her property.  *See* Dkt. No. 16 ("FAC").  The case has a lengthy and complicated

8    history.  Plaintiff states that in 2005 she obtained a second-position mortgage in the amount of

9    $120,000 from City National Bank ("CNB") and executed a deed of trust as security for the note.

10   *Id.* at ¶ 12.  Although at the time Plaintiff owned the property with her former husband, only

11   Plaintiff was listed as the "borrower" for the loan.  *See id.*   Plaintiff alleges that she paid 25% of

12   the balance between 2005 and 2008, but acknowledges that she defaulted on the loan in 2010.  *Id.*

13   at ¶¶ 14–15.  CNB then accelerated the balance and declared the sum payable.  *Id.* at ¶ 15.

14       According to Plaintiff, before any foreclosure action took place, her former husband—but

15   not Plaintiff—filed for bankruptcy in 2012 and listed the CNB loan as a scheduled debt.  *Id.* at

16   ¶ 17.  As part of his petition, her former husband also signed over the deed to the property, making

17   it the property of the bankruptcy estate.  *Id.*  Plaintiff contends that because only her name was

18   listed on the CNB note, the loan was unaffected by his bankruptcy discharge.  *See id.* at ¶ 20.  She

19   therefore stayed in close contact with CNB to negotiate an alternative to foreclosure.  *See id.* at

20   ¶ 18.  She alleges that CNB ultimately denied her loan modification application in May 2014, but

21   told her that the foreclosure action was on hold until further notice.  *Id.* ¶ 19.  Yet Plaintiff

22   contends that in 2014 she simply stopped receiving monthly statements—or any notices at all—

23   from CNB or any other entity.  *See id.* at ¶¶ 20–21, 26–27.  She filed for bankruptcy herself

24   multiple times from 2014 to 2018, but the cases were closed without a discharge.  *See id.* at ¶¶ 22,

25   25.  Still, Plaintiff asserts that she reasonably believed her loan had closed and stopped accruing

26   interest because of the lack of communication from CNB.  *See id.* at ¶ 27.

27       However, in November 2022, Plaintiff received a notice that CNB had transferred

28   servicing rights and ownership of the loan to Defendant Wharton.  *Id.* ¶ 28.  In March 2023,

United States District Court
Northern District of California

1    Defendant recorded a notice of default on the property, stating that the amount owed was

2    $239,278.00, inclusive of monthly interest charged since 2015. *Id.* at ¶ 29. On June 30, 2023,

3    Defendant recorded a Notice of Trustee's Sale and set the property for auction on July 26, 2023.

4    *See* Dkt. No. 17-1 at 4. Plaintiff asserts that Defendant's failure to timely collect and

5    communicate with her about the loan's status renders its current attempt to foreclose on the home

6    improper.[1] FAC at ¶ 30. Based on these facts, she brings causes of action for (1) violation of the

7    Federal Truth in Lending Act; (2) breach of the implied covenant of good faith and fair dealing;

8    (3) violation of the Fair Debt Collections Practices Act; (4) violation of 12 C.F.R. § 1024.41,

9    which requires a servicer to transmit billing statements; and (5) violations of several California

10   statutes. *See id.* at ¶¶ 33–85.

## II.   LEGAL STANDARD

12          Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin

13   conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard

14   for issuing a temporary restraining order and issuing a preliminary injunction are substantially

15   identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th

16   Cir. 2001). A plaintiff seeking preliminary relief must establish: (1) that it is likely to succeed on

17   the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief;

18   (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.

19   *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an

20   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

21   to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of

22   the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the

23   Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious

24   questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant],"

25   and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the

26   injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

27   _____

28   [1] Although Plaintiff named CNB in the original complaint, she later dismissed CNB from the case. *See* Dkt. No. 15. Wharton is the only remaining Defendant.

3

United States District Court
Northern District of California

Cir. 2011).

## III.   DISCUSSION

Despite the strategic choice to delay in filing this application, the Court finds that Plaintiff has demonstrated the presence of serious questions going to the merits of her case and that the balance of hardships tips sharply in her favor.

### A.   Likelihood of Success on the Merits

As an initial matter, the Court concludes that at this stage Plaintiff has established serious questions going to the merits of at least one of her causes of action.  For example, under the federal Truth in Lending Act ("TILA"), a mortgage loan servicer must "transmit to the obligor, for each billing cycle, a statement" that includes specific information, including the principal obligation, the current interest rate, and a description of any late fees.  15 U.S.C. § 1638(f); *see also* 12 C.F.R. § 1026.41(a)(2) (requiring "periodic statements").  Although Defendant points out that it did not acquire servicing rights from CNB until November 2022, *see* Dkt. No. 19 at 12–13, Plaintiff suggests that Defendant acquired CNB's obligations when it became servicer, *see* Dkt. No. 17-1 at 6–7.  And in any event, neither Defendant's opposition nor the FAC suggest that Defendant somehow cured any deficiencies caused by CNB such that it was still entitled to any prior interest on the loan that was charged without periodic statements and in contravention of the requirements under TILA.

Defendant's primary argument appears to be that Plaintiff's claim is barred by the one-year statute of limitations.  *See* Dkt. No. 19 at 10.  However, "[t]here is some debate" about when the statute of limitations begins to run.  *See, e.g.*, *Alphonso v. Real Time Resols., Inc.*, No. 23-CV-01488-JSC, 2023 WL 3794502, at *3 (N.D. Cal. June 2, 2023) (citing *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) and *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)).  Regardless, equitable tolling may be appropriate "'where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Id.* (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011)).  Here, Plaintiff contends that she never received any billing statements or communications from 2015 to November 2022.  She requested an accounting of the loan in May 2015, but never

heard back.  *See* FAC at ¶ 23.  She therefore concluded "that the loan was closed and was no longer accruing interest."  *See id.* at ¶ 27.  Only several years later did Defendant claim that she owes over $200,000 on the loan, which includes "interest for every month since 2015."  *See id.* at ¶ 29.  Under this theory, Plaintiff could not have discovered the alleged discrepancies until November 2022 when she was finally informed that the loan was not in fact closed, and she was entitled to billing statements from 2015 onward.  Although such arguments may not ultimately succeed, the Court finds that they do raise serious questions that will be better addressed on a more fulsome record.

### B.   Irreparable Harm

Here, Defendant urges that Plaintiff's asserted harm—the loss of her home—is not irreparable because it is self-inflicted.  *See* Dkt. No. 19 at 15.  Defendant points out that Plaintiff defaulted on the loan in 2010, but only sought court intervention on the eve of the foreclosure.  *Id.*  As noted above, the Court is cognizant that even as alleged by Plaintiff, she was aware of the notice of default in March 2023 and of the impending foreclosure almost a month before she filed this application.  *See* FAC at ¶ 29; *see also* Dkt. No. 17-1 at 4.

Nevertheless, "[c]ourts have repeatedly concluded that the loss of one's home is sufficient to satisfy the element of irreparable injury."  *See Castellanos v. Countrywide Bank NA*, No. 15-CV-00896-BLF, 2015 WL 914436, at *2 (N.D. Cal. Feb. 27, 2015) (collecting cases).  Plaintiff states in her declaration that she purchased the Property in 2000, and that she has resided there ever since.  *See* Dkt. No. 17-2 at ¶¶ 2, 22.  If the foreclosure sale proceeds tomorrow as planned, Plaintiff will lose her home before the Court can hold a hearing on the application.  *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) ("[A] TRO should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." (quotation omitted)); *see also* Fed. R. Civ P. 65(b).  The Court therefore finds that irreparable harm likely will occur absent a TRO.

### C.   Balance of the Equities

Similarly, various courts have found that the balance of equities tips sharply in the plaintiff's favor when a plaintiff seeks to enjoin the defendant from carrying out the foreclosure

sale of her property.  *See Castellanos*, 2015 WL 914436, at *2; *Vazquez v. Select Portfolio Servicing*, No. 13-CV-03789-JST, 2013 WL 5401888, at *2 (N.D. Cal. Sept. 26, 2013), *order dissolved on other grounds*, No. 13-CV-03789-JST, 2013 WL 5770995 (N.D. Cal. Oct. 23, 2013); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, at *5 (N.D. Cal. July 6, 2011).  For example, in *Castellanos*, the Court concluded that the defendants would not suffer serious hardship upon issuance of a TRO because they would still retain any valid security that they had in the property.  *See* 2015 WL 914436, at 2.  On the other hand, the plaintiff would lose her property if the foreclosure sale went through.  *Id.*  On the facts alleged here, the Court finds that the balance of equities similarly tips in Plaintiff's favor.  *See Winter*, 555 U.S. at 20. Although Defendant points out that the loan has been in default without payment for many years, *see* Dkt. No. 19 at 15–16, its entitlement to recover the balance of the loan and any interest or fees will not change with the issuance of a TRO.

### D.    Public Interest

Defendant urges that there are no public interest concerns in this case because it only involves Plaintiff's private residence.  *See* Dkt. No. 19 at 16.  But the Court disagrees.  "It is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes."  *Castellanos*, 2015 WL 914436, at *2 (quoting *Sencion v. Saxon Mortg. Servs., LLC*, No. 5:10-CV-3108 JF, 2011 WL 1364007, at *3 (N.D. Cal. Apr. 11, 2011)); *see also Tamburri*, 2011 WL 2654093, at *5 (same).  Given the serious questions that Plaintiff has raised as to the status of the loan, the Court finds that a TRO is in the public interest.

*          *          *

The Court accordingly **GRANTS** the Plaintiff's TRO application, solely to maintain the status quo until the earliest possible hearing on the merits of the request.

### IV.    BOND

Under Rule 65(c), "[t]he court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  However, district courts have considerable discretion in determining whether the posting of

United States District Court
Northern District of California

6

1    a bond is necessary:

2

3            Despite the seemingly mandatory language, Rule 65(c) invests the
             district court with discretion as to the amount of security required, *if
4            any*.  In particular, the district court may dispense with the filing of a
             bond when it concludes there is no realistic likelihood of harm to the
5            defendant from enjoining his or her conduct.

6    *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation and internal citations

7    omitted) (emphasis in original).  Courts have found that the posting of a bond is also not necessary

8    when granting a TRO where a hearing on the matter is held shortly thereafter.  *See, e.g.*, *Sencion*,

9    2011 WL 1364007, at *3 (no posting of bond required where order to show cause hearing would

10   be held within ten days).  That same rationale applies here.  The Court finds that there is no

11   realistic likelihood of harm to Defendant from enjoining its conduct in the short period of time

12   before the Court can hold a hearing and hear fulsome argument on the matter.

13   **V.    CONCLUSION**

14          The Court **GRANTS** Plaintiff's TRO application.  Defendant is enjoined from any sale,

15   disposition, or transfer of the property located at 90 Madera Court, Danville, California 94526, in

16   any manner, including but not limited to a foreclosure sale, until a hearing can be held on the

17   merits of Plaintiff's request.  This TRO shall take effect immediately and shall remain in effect

18   until further order of this Court.

19          Plaintiff is **DIRECTED** to file a reply brief by 5:00 p.m. on Friday, July 28, 2023.

20   Plaintiff is informed that the Court will not grant any extension of time for this filing given

21   Plaintiff's own delay in bringing this action and seeking a TRO.  The Court further **SETS** a show

22   cause hearing on Plaintiff's application for preliminary injunction for Friday, August 4, 2023, at

23   10:00 a.m. in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA.  All parties shall attend in

24   person.

25          **IT IS SO ORDERED.**

26   Dated: July 25, 2023

27                                              *Haywood S. Gilliam, Jr.*

28                                              HAYWOOD S. GILLIAM, JR.
                                                United States District Judge

United States District Court
Northern District of California