UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH GRANADOS,

Plaintiff,

v.

WHARTON NOTE COMPANY,

Defendant.

Case No. 23-cv-02948-HSG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 61

Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint, Dkt. No. 61. The Court finds the matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court GRANTS the motion in part and DENIES it in part.

## I.     BACKGROUND

Plaintiff Elizabeth Granados alleges that Defendant Wharton Note Company is wrongfully seeking to foreclose on her property. *See* Dkt. No. 16 ("FAC").[1] Plaintiff states that in 2005 she obtained a second-position mortgage in the amount of $120,000 from City National Bank ("CNB") and executed a deed of trust as security for the note. *Id.* at ¶ 12. Although at the time Plaintiff owned the property with her former husband, only Plaintiff was listed as the "borrower" for the loan. *See id.* Plaintiff alleges that she paid 25% of the balance between 2005 and 2008, but acknowledges that she defaulted on the loan in 2010. *Id.* at ¶¶ 14–15. CNB then accelerated the balance and declared the sum payable. *Id.* at ¶ 15.

According to Plaintiff, before any foreclosure action took place, her former husband—but

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   not Plaintiff—filed for bankruptcy in 2012 and listed the CNB loan as a scheduled debt. *Id.* at

2   ¶ 17.  As part of his petition, her former husband also signed over the deed to the property, making

3   it the property of the bankruptcy estate. *Id.*  Plaintiff contends that because only her name was

4   listed on the CNB note, the loan was unaffected by his bankruptcy discharge. *See id.* at ¶ 20.  She

5   therefore stayed in close contact with CNB to negotiate an alternative to foreclosure. *See id.* at

6   ¶ 18.  She alleges that CNB ultimately denied her loan modification application in May 2014, but

7   told her that the foreclosure action was on hold until further notice. *Id.* ¶ 19.  Yet Plaintiff

8   contends that in 2014 she simply stopped receiving monthly statements—or any notices at all—

9   from CNB or any other entity. *See id.* at ¶¶ 20–21, 26–27.  She filed for bankruptcy herself

10  multiple times from 2014 to 2018, but the cases were closed without a discharge. *See id.* at ¶¶ 22,

11  25.  In particular, Plaintiff states that in her first bankruptcy filing in 2015, she scheduled the CNB

12  loan in the bankruptcy proceedings, and the case was closed without discharge. *See id.* at ¶ 22.

13  Plaintiff asserts that at this point she reasonably believed her loan had closed and had stopped

14  accruing interest because of the lack of communication from CNB. *See id.* at ¶ 27.

15          However, in November 2022, Plaintiff received a notice that CNB had transferred

16  servicing rights and ownership of the loan to Defendant Wharton. *Id.* ¶ 28.  In March 2023,

17  Defendant recorded a notice of default on the property, stating that the amount owed was

18  $239,278.00, inclusive of monthly interest charged since 2015. *Id.* at ¶ 29.  On June 30, 2023,

19  Defendant recorded a Notice of Trustee's Sale and set the property for auction on July 26, 2023.

20  *See* Dkt. No. 17-1 at 4.

21          On July 21, 2023, Plaintiff filed an *ex parte* application in this Court for a temporary

22  restraining order ("TRO") to enjoin the foreclosure sale, which the Court granted.  Dkt. Nos. 17,

23  20.  The parties stipulated to extend the TRO several times. *See* Dkt. Nos. 24, 27, 35, 38, 42, 55,

24  66, 76.  Defendant now seeks to dismiss Plaintiff's amended complaint.  Dkt. No. 61 ("Mot.").

25  Plaintiff opposes.  Dkt. No. 63 ("Opp.").

26          The amended complaint asserts that Defendant's failure to timely collect and communicate

27  with Plaintiff about the loan's status renders its current attempt to foreclose on the home

28

1   improper.[2]  FAC at ¶ 30.  Plaintiff brings the following claims:  (1) violation of the Federal Truth

2   in Lending Act ("TILA"); (2) breach of the implied covenant of good faith and fair dealing; (3)

3   violation of the Fair Debt Collections Practices Act ("FDCPA"); (4) violation of 12 C.F.R. §

4   1024.41, which requires a servicer to transmit billing statements; and (5) violations of several

5   California statutes.  *See id.* at ¶¶ 33–85.

6   **II.   LEGAL STANDARD**

7          Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

8   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

9   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

10  granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

11  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

12  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

13  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

14  on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

15  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

16  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

18  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

19  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

20  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

21  fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

22  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

23  **III.  DISCUSSION**

24         **A.    TILA and TILA Implementing Regulations**

25          Plaintiff's complaint alleges that CNB's failure to send her monthly notices violated

26  TILA's periodic notice requirement.  *See* FAC ¶¶ 32–36.  Under TILA, "a creditor, assignee, or

27  _____

28  [2] Although Plaintiff named CNB in the original complaint, she later dismissed CNB from the case.  *See* Dkt. No. 15.  Wharton is the only remaining Defendant.

3

United States District Court
Northern District of California

1    servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing

2    cycle, a statement setting forth" information about the loan, including the amount owed on the

3    principal, the interest rate, and any late payment fees.  *See* 15 U.S.C. § 1638(f).  TILA's

4    implementing regulations impose similar obligations.  *See* 12 C.F.R. § 1026.41(a)–(d) (obligations

5    extend to a "creditor, assignee, or servicer, as applicable").  Defendant argues two grounds to

6    dismiss Plaintiff's claims under these statutes: 1) the claims are time-barred, and

7    2) CNB was exempt from the requirement to provide statements to Plaintiff due to her husband's

8    bankruptcy.

9            **i.    Statute of limitations**

10           Defendant argues Plaintiff's TILA claims are time-barred by the statute's one-year

11   limitations period because Plaintiff had knowledge of CNB's failure to provide periodic

12   statements no later than 2018, but did not bring her claims until 2023.  Mot. at 17–19.  However,

13   Plaintiff's complaint alleges that she reasonably believed the loan was closed until November

14   2022, when she received a communication from CNB indicating that the loan had been transferred

15   to Defendant.  FAC ¶ 19.  Based on these facts, Plaintiff argues that the discovery rule should toll

16   her TILA claims to that point, such that her July 2023 complaint is timely.  Opp. at 12.

17           The statute of limitations for a TILA claim is normally one year from the date of the

18   consumer transaction between the parties.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986)

19   (citing 15 U.S.C. § 1640(e)).  But as the Ninth Circuit has clarified, the discovery rule may toll

20   this deadline until the "borrower discovers or had reasonable opportunity to discover the fraud or

21   nondisclosures that form the basis of the TILA action."  *See id.*  Accordingly, "'[a] district court

22   may dismiss a claim if the running of the statute is apparent on the face of the complaint," but

23   "only if the assertions of the complaint, read with the required liberality, would not permit the

24   plaintiff to prove that the statute was tolled."  *Alphonso v. Real Time Resols., Inc.*, No. 23-CV-

25   01488-JSC, 2023 WL 3794502, at *3 (N.D. Cal. June 2, 2023) (quoting *Cervantes v. Countrywide

26   Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011)).

27           Here, Plaintiff argues that she reasonably believed the loan was "charged off" due to the

28   absence of any effort to collect or impose fees on the loan and the lack of any communication

4

United States District Court
Northern District of California

1    about the loan between 2014 and 2022. Opp. at 6. She also alleges that in 2015, CNB's loan

2    officer told her that "[a]t this time, until further notice, CNB has placed the foreclosure action on

3    hold." FAC ¶ 19. Finally, Plaintiff maintains that she asked the loan officer for an accounting of

4    the loan in 2015 after the statements stopped, but never received a response. *Id.* ¶ 23.

5         The Court finds these facts sufficient to plausibly allege that the discovery rule could apply

6    to toll Plaintiff's TILA claims. Defendant argues that tolling is not available because Plaintiff's

7    amended complaint shows that Plaintiff did, in fact, have knowledge of the loan's current status

8    and CNB's alleged notice violations as early as 2015 and as late as 2018. Mot. at 18. Defendant's

9    support for this argument is contained in the bankruptcy records attached to its request for judicial

10   notice rather than facts alleged in the complaint. *See id.* (citing Dkt. No. 61-2, Defendant's

11   Request for Judicial Notice). While the Court may take judicial notice of the undisputed fact of

12   Plaintiff's and her husband's bankruptcies as evident in the bankruptcy records, it may not take

13   judicial notice of the disputed facts contained within those records. *See Khoja v. Orexigen*

14   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of

15   matters of public record without converting a motion to dismiss into a motion for summary

16   judgment," but it "cannot take judicial notice of disputed facts contained in such public records.")

17   (internal quotations and citation omitted).

18        Defendant also asserts that Plaintiff fails to cite "one objective communication from

19   anyone supporting that [sic] Plaintiff's conclusion that [the] loan was forgiven," and further claims

20   that Plaintiff would have known about the loan if she took "reasonable steps" to inquire about its

21   status. Mot. at 18. But accepting the allegations on the face of Plaintiff's complaint as true and

22   viewing them in the light most favorable to her, it is plausible that the email Plaintiff received

23   from CNB stating that the foreclosure was "on hold" led her to believe the loan was forgiven, and

24   that her subsequent unanswered inquiry to CNB about the status of the loan amounted to

25   reasonable diligence. Accordingly, Plaintiff has adequately pled facts that could establish she did

26   not have reason to discover the TILA violations until November 2022, and the Court may not

27   dismiss her TILA claims as time-barred. To the extent discovery reveals a basis for seeking

28   summary judgment as to this issue, Defendant may do so at that stage.

### ii.    Bankruptcy exemption

Defendant next argues that even if Plaintiff's TILA claims are not time-barred, the claims nonetheless fail because CNB was exempt from the requirement to send periodic statements under TILA's implementing regulations, 12 C.F.R. § 1026.41.  Mot. at 12–15.  Two different versions of this exemption were applicable during the period in which Plaintiff alleges the notice violations occurred.  Prior to 2018, the exemption provided,

> "A servicer is exempt from the requirements of this section for a mortgage loan while the consumer is a debtor in bankruptcy under Title 11 of the United States Code."

12 C.F.R. § 1026.41(e)(5) (2014) (amended 2018).  Then in 2018, this provision was modified to add additional requirements for servicers to qualify for the bankruptcy exemption:

> "(i) Exemption.  Except as provided in paragraph (e)(5)(ii) of this section, a servicer is exempt from the requirements of this section with regard to a mortgage loan if:
>
> > (A) Any consumer on the mortgage loan is a debtor in bankruptcy under title 11 of the United States Code or has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. 727, 1141, 1228, or 1328; and
> >
> > (B) With regard to any consumer on the mortgage loan: . . .
> >
> > > (2) The consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan, provides for the avoidance of the lien securing the mortgage loan, or otherwise does not provide for, as applicable, the payment of pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan. . . ."

12 C.F.R. § 1026.41(e)(5) (2018) (current).  Defendant claims that under both versions of the statute, CNB was exempt from any obligation to provide statements to Plaintiff between 2015 and 2022.  Mot at 12.

Beginning with the current version of the bankruptcy exemption, Defendant alleges that requirement (B)(2) above is met here because Plaintiff's husband's bankruptcy plan "did not provide for cure of the arrearages or maintenance of payments, and because Plaintiff's Husband provide [sic] for 'surrender' of the Property and did not provide for payment of the Loan."  Mot. at

United States District Court
Northern District of California

14. Plaintiff disputes this, arguing that CNB's continued charging of interest on the loan suggests the bankruptcy plan may have, in fact, provided for "the maintenance of payments." *See* Opp. at 15 (citing *Gonzalez v. Specialized Loan Servicing*, LLC, 691 F. Supp. 3d 1162, 1172 (C.D. Cal. 2023) ("[T]he fact that Defendant seeks to collect interest accrued on the loan suggests the bankruptcy plan may have provided for the 'maintenance of payments due under the mortgage loan' in some form.")).  To support its argument, Defendant once again improperly relies on disputed facts contained in the bankruptcy documents attached to its request for judicial notice. *See* Mot. at 14.  Accordingly, the Court cannot conclude as a matter of law that the later version of the bankruptcy exemption applies here such that Plaintiff's TILA claims must be dismissed. Plaintiff's allegation that she, the obligor on the mortgage loan, never received periodic statements from CNB, her creditor, is therefore sufficient for her TILA-related claims to survive Defendant's motion to dismiss.  *See* 15 U.S.C. § 1639(f); 12 C.F.R. § 1026.41(a)–(d).  Defendant may raise arguments about whether it was exempt from sending statements during some period at a later stage based on the development of an actual factual record.

### iii. "Charged off" loan exemption

Plaintiff's complaint also cites a second provision of the TILA implementing regulations: 12 C.F.R. § 1026.41(e)(6).  This provision exempts loan servicers from sending periodic statements for "charged off" loans, but the statement obligation resumes if the servicer "fails at any time to treat a mortgage loan that is exempt under paragraph (e)(6)(i) of this section as charged off or charges any additional fees or interest on the account."  *See id.* § 1026.41(e)(6)(ii)–(iii).  According to Plaintiff, her loan was charged off in 2015 when she last heard any communication from CNB, but CNB continued to assess late payments and interest, without sending periodic statements as required by exemption (e)(6).  *See* FAC ¶ 69; Opp. at 10.  Plaintiff argues that these fees were therefore unlawful because (e)(6) "disallows the servicer from charging interest [on a charged off loan] without sending monthly statements."  FAC ¶ 58.

Defendant counters that this theory is implausible because Plaintiff does not plead that Defendant sent her an official charge-off notice, which is a prerequisite that exemption (e)(6) imposes for a servicer to be exempt from the periodic notice requirement.  *See id.*

§ 1026.41(e)(6)(i)(B) (emphasis added). But Defendant does not cite any authority holding that Plaintiff must plead at this stage that Defendant met this formal notice requirement in order to state her own claim. *See* Dkt. No. 71 at 8 (citing *Supriyanto v. Bank of New York Mellon*, No. LACV2107635JAKEX, 2022 WL 1843132, at *4–5 (C.D. Cal. Apr. 4, 2022) (addressing application of discovery rule to 12 C.F.R. § 1026.7 claim, not charged off loan exemption)). Moreover, Plaintiff's complaint specifically alleges that she received notice of the loan being charged off via an email from CNB's loan officer, and that she was still charged monthly interest and late fees for years after the alleged charge-off. *Id.* ¶¶ 20, 29. Such facts are sufficient for Plaintiff to plausibly allege the application of exemption (e)(6), such that CNB and Defendant should have been providing periodic statements if her loan was charged off, as she claims. *Cf. Novobilski v. Specialized Loan Servicing, LLC*, No. 222CV00147MEMFMAR, 2022 WL 3566812, at *10 (C.D. Cal. Aug. 16, 2022) (holding that plaintiffs did not adequately plead charged off loan theory because they "failed to provide any insight into why they believed the loan was charged off"); *May v. Specialized Loan Servicing, LLC*, No. EDCV23417JGBSHKX, 2023 WL 8885140, at *4 (C.D. Cal. Apr. 27, 2023) (similarly dismissing claim alleging failure to provide periodic statements on a charged off loan because plaintiffs only "allege[d] that they were advised their loan was charged off . . . but not when or how they were so advised"). Again, at the summary judgment stage, Defendant may raise the argument that Plaintiff's loan was not charged off as a factual matter based on actual facts developed in discovery.

The Court thus **DENIES** Defendant's motion to dismiss Plaintiff's TILA and Section 1026.41 claims.[3]

//

//

//

---

[3] In its reply, Defendant argues that an "attendant community property discharge" separate from Plaintiff's husband's personal bankruptcy discharge also prohibited CNB from sending any notices to Plaintiff. *See* Dkt. No. 71 at 6. Given that this argument was only raised on reply, the Court declines to consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

United States District Court
Northern District of California

**B.    FDCPA**

Defendant argues that Plaintiff's FDCPA claim is time-barred because the statute of limitations is one year, and it is not subject to equitable tolling.  Mot. at 17.  Defendant is correct that an FDCPA claim is not subject to the discovery rule, and its one-year statutory period begins to accrue "when a violation occurs."  *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).  Whether Plaintiff's claim is timely therefore depends on her framing of CNB's and Defendant's alleged FDCPA violations.

Plaintiff's amended complaint cites FDCPA provisions that prohibit debt collectors from making a false representation about the character, amount, or legal status of a debt (15 U.S.C. § 1692(e)(A)(2)); threatening to take action that cannot be legally taken (*id.* § 1692(e)(A)(5)); using a false representation to attempt to collect the debt (*id.* § 1692(e)(A)(10)); and attempting to collect an amount not expressly authorized by the loan agreement (*id.* § 1692(f)(1)).  Defendant maintains that all of these allegations are entirely premised on CNB's alleged forgiveness of Plaintiff's loan and subsequent unlawful charges starting in 2014, such that the one-year statute of limitations bars the claim.  Mot. at 17.  Defendant separately argues that it is not a "debt collector" subject to FDCPA regulations because it was "solely exercis(ing) its rights to foreclose on a security interest."  Mot. at 20.

In her opposition, Plaintiff clarifies that her FDCPA claim is not premised on CNB's actions or Defendant's attempt to foreclose on her property, but rather her allegation that Defendant misrepresented the amount Plaintiff owed by demanding late fees and interest unlawfully assessed on her "charged off" loan.  Opp. at 19.  Under this theory, her claim could be timely, and the facts pled may be sufficient to establish that Defendant acted as a debt collector subject to the FDCPA.  *Id.*  Still, Plaintiff requests leave to amend her claim to "better articulate" these points.  *Id.*  The Court thus **GRANTS** Defendant's motion to dismiss Plaintiff's FDCPA claim with leave to amend.

**C.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff also brings a claim for breach of the implied covenant of good faith and fair dealing.  Plaintiff argues that the obligations of her contractual relationship with CNB as her

mortgage holder transferred to Defendant when Defendant was assigned the deed of trust and mortgage note. FAC ¶ 46. She alleges Defendant and CNB "through their own inaction interfered with [her] ability to perform on the contract and thereby induced Plaintiff's breach." *Id.* ¶ 48.

The Court finds that these facts do not sufficiently plead the elements of a claim for breach of the implied covenant of good faith and fair dealing. Under California law, this covenant "imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible *by any act of his own*." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960) (emphasis added). Plaintiff claims that Defendant's inaction "induced Plaintiff's breach" for eight years. But Defendant did not take over her loan until November 2022, well after it had become due. FAC ¶ 28. Plaintiff also acknowledges that at time the transfer occurred, CNB informed Plaintiff that Defendant would be taking over the loan, and only three months later Defendant sent Plaintiff a notice of default. *Id.* ¶¶ 28–29. Given that even as alleged, Defendant took prompt action to communicate with Plaintiff about the status of her loan once it was assigned, it is not plausible that Defendant's "inaction" over the course of approximately four months could have induced Plaintiff's failure to pay her mortgage for nearly eight years prior to that period. *Cf. Gonzalez*, 691 F. Supp. 3d at 1174 (holding that breach of fair dealing claim was plausibly pled where defendant had assumed responsibility for plaintiff's debt without informing plaintiff, and at an unknown time during a 14-year period in which notices were not sent). Moreover, Plaintiff does not cite any authority for the notion that because the terms of the deed of trust apply to Defendant as assignee, Defendant is also liable for CNB's alleged prior bad faith dealing under those terms (which is a different question than whether Defendant may collect on any fees CNB charged in bad faith). Thus, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.[4]

//

//

---

[4] Because the Court concludes Plaintiff has not plausibly alleged that Defendant interfered with her ability to perform under the deed of trust, the Court declines to address Defendant's alternative argument that Plaintiff's claim is time-barred. Mot. at 19.

**D.    California Statutes**

Plaintiff also brings claims under several California statutes, including California Civil Code Sections 2924.17, 2954.5, and 2966, and California's Unfair Competition Law ("UCL").

**i.    Cal. Civ. Code § 2924.17 and 2954.5**

California Civil Code Section 2924.17 provides that a notice of default in connection with a foreclosure "shall be accurate and complete," and that before sending any such notice, a mortgage servicer must "ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Cal. Civ. Code § 2924.17(a)–(b). Plaintiff alleges that Defendant violated this statute by serving her an inaccurate notice of default, "considering it is prohibited from accruing interest and late fees on the loan for the time it was charged off per TILA as stated supra and 2954 as stated below." FAC ¶¶ 66–69.

Plaintiff's Section 2924.17 claim references California Civil Code Section 2954.5, which requires lenders to notify borrowers in writing before assessing any default, delinquency, or late payment charge on a mortgage loan. Cal. Civ. Code § 2954.5(a). Plaintiff argues that the late fees and interest payments Defendant has inherited on her loan are unlawful because CNB charged them without first notifying her, in violation of this statute. FAC ¶¶ 72–73. This argument may be partly correct, as according to the statutory language of Section 2954.5, a lender's failure to notify a borrower in advance of a late fee excuses the borrower's "obligation to pay a late payment charge." *See* Cal. Civ. Code § 2954.5(e). However, the statute only covers "default, delinquency, or late payment charge[s]," not interest payments. *See id*. § 2954.5(a); *see also Warren v. Specialized Loan Servicing, LLC*, No. 5:23-CV-00887-SPG-SHK, 2024 WL 3207003, at *4 (C.D. Cal. Mar. 1, 2024) (holding that Section 2954.5 "does not govern the charging of interest on a loan"). Accordingly, Plaintiff's Section 2954.5 claim is only viable as to the allegedly unlawful late fees assessed on her loan without the proper notice, and not as to interest accrued. And in turn, her 2924.17 claim is plausible to the extent it alleges that late fees assessed in violation of Section 2954.5, and charges assessed in violation of TILA, inaccurately inflated the default amount on her loan.

1     Defendant argues that TILA impliedly preempts these state notice requirements because,

2     under TILA, Defendant "could not send payment statements or late charge notices during the

3     bankruptcies or after the Discharge or it would face legal liability." Mot. at 21.  But the Court has

4     determined that Plaintiff's theory of TILA liability, which alleges the statute did require CNB and

5     Defendant to provide periodic notices, is plausible on the face of her complaint.  Thus, accepting

6     this theory as true, the notice requirements under these California statutes would be entirely

7     consistent with TILA, and the state statutes would not be preempted.  *See* 15 U.S.C. § 1610

8     (preempting state law disclosure statutes "only to the extent that those laws are inconsistent with

9     the provisions of" TILA).

10     In sum, the Court **DENIES** Defendant's motion to dismiss Plaintiff's Section 2954.5 claim

11     premised on the assessment of late charges.  Similarly, the Court **DENIES** the motion to dismiss

12     Plaintiff's Section 2924.17 claim to the extent it relies on the unlawful assessment of late fees

13     under Section 2954.5 and TILA violations.

14          ii.     **Cal. Civ Code § 2966**

15     Plaintiff brings a claim under California Civil Code Section 2966 on the basis that

16     Defendant failed to provide adequate notice of the "balloon payment" due on Plaintiff's mortgage.

17     Opp. at 21.  Defendant is correct that this statute is inapplicable here.  Section 2966 only applies to

18     "a transaction regulated by [the] article" in which it appears, which in turn applies to "a

19     transaction for the purchase of a dwelling for not more than four families in which there is an

20     arranger of credit, which purchase includes an extension of credit by the vendor."  *See* Cal. Civ.

21     Code §§ 2966, 2956.  The code defines an "arranger of credit" as either: 1) "[a] person, other than

22     a party to the credit transaction . . . who is involved in developing or negotiating credit terms," or

23     2) "[a] party to the transaction who is either a real estate licensee . . . or is an attorney . . . if neither

24     party to the transaction is represented by an agent who is a real estate licensee."  *Id.* § 2958(a).

25     As pled, the transaction financing Plaintiff's mortgage note involved Plaintiff, her husband, and

26     CNB, FAC ¶ 12, none of whom constitute an "arranger of credit" under the statute.  Accordingly,

27     the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim under Section 2966 with

28     leave to amend (although the Court finds it hard to imagine how amendment could possibly cure

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the deficiencies in this claim given the facts Plaintiff has already pled).

2           iii.    **Unfair Competition Law**

3           Finally, Plaintiff brings a state law claim under the UCL, which prohibits "any unlawful,

4   unfair or fraudulent business act or practice."  *See* Cal. Bus. & Prof. Code § 17200.  Her complaint

5   only alleges violations of the statute's unlawful prong, which "borrows" violations of other federal

6   and state laws.  *See* FAC ¶¶ 81, 82; *Pac. Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG,

7   2024 WL 3236705, at *12 (N.D. Cal. June 28, 2024).  Confusingly, Plaintiff's opposition to the

8   motion to dismiss also recites the standards for the UCL's unfair and fraudulent prongs, but

9   neither her opposition nor her complaint submits any specific facts to support these theories.  *See*

10  Opp. at 16.  As such, the Court will only address Plaintiff's UCL claim as pled under the statute's

11  unlawful prong.

12          Defendant argues that Plaintiff lacks standing to assert her UCL claim, citing *Novobilski v.*

13  *Specialized Loan Servicing*, LLC, 2022 WL 3566812, at *15 (C.D. Cal. Aug. 16, 2022), which

14  held that plaintiffs lacked standing under the UCL because they failed to establish a causal link

15  between their economic injury and the loan servicer's conduct.  *See id.*; Mot. at 22–23.

16          Although the case Defendant cites is not controlling here, the Court agrees that Plaintiff's

17  amended complaint has not sufficiently alleged her standing to bring a UCL claim.  The complaint

18  states that Defendant's violations of the "Consumer Finance Regulations" and its breach of the

19  implied covenant of good faith and fair dealing are the predicate violations underlying Plaintiff's

20  UCL claim, and that her injury is "the destruction of her credit."  FAC ¶¶ 81–83.  In Plaintiff's

21  opposition to the motion to dismiss, she also describes her injury for UCL purposes as "the

22  imminent loss of her home."  Opp. at 22.

23          While Plaintiff's alleged injuries may constitute economic injury, Plaintiff must still satisfy

24  the UCL's causation element, which requires that a Plaintiff "show that that economic injury was

25  the result of, i.e., caused by, the unfair business practice."  (*Junod v. Mortg. Elec. Registration*

26  *Sys., Inc.*, 584 F. App'x 465, 469 (9th Cir. 2014) (quoting *Kwikset Corp. v. Superior Court*, 51

27  Cal.4th 310 (2011)).  Applying this standard, the Court finds that Plaintiff's complaint fails to

28  sufficiently plead that Defendant's wrongful conduct as alleged in the predicate claims (failure to

provide required notices, unlawful charging of late fees and interest) caused Plaintiff's injuries as pled in her UCL claim.  First, Plaintiff cannot show that Defendant's unfair business practices, rather than her failure to make her mortgage payments, led to the threatened foreclosure of her home.  *See Junod*, 584 F. App'x at 469; *see also Braxton v. Select Portfolio Servicing, Inc.*, No. 18-CV-03271-JSW, 2018 WL 11471250, at *6 (N.D. Cal. Sept. 17, 2018) (holding that because plaintiff "defaulted on her loan prior to the acts that she alleges violated the UCL," she could not "allege the requisite causal connection" between the violations and her foreclosure).  Similarly, "while overcharges and destruction of credit can constitute monetary loss sufficient to confer standing to bring suit under the UCL, the plaintiff must connect that injury to the unlawful conduct alleged." *Berkeley v. Wells Fargo Bank*, No. 15-CV-00749-JSC, 2015 WL 6126815, at *15 (N.D. Cal. Oct. 19, 2015).  And here, Plaintiff does not allege any facts connecting the destruction of her credit to CNB's or Defendant's failure to provide periodic statements and/or the assessment of late fees and interest.  The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claim with leave for Plaintiff to amend in accordance with the Court's Order.

## IV.    CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss as follows:

- The Court **DISMISSES** the FDCPA claim with leave to amend.
- The Court **DISMISSES** the breach of the implied covenant of good faith and fair dealing claim with leave to amend.
- The Court **DISMISSES** the Cal. Civ Code § 2966 claim with leave to amend.
- The Court **DISMISSES** the UCL claim with leave to amend.

Any amended complaint must be filed within 21 days of the date of this order.  This order terminates Dkt. No. 61.

The Court further **SETS** case a case management conference on October 15, 2024, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15

United States District Court
Northern District of California

minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are further **DIRECTED** to file a joint case management statement by October 8, 2024.  The Court is strongly of the view that now is the time for the parties to renew good-faith settlement discussions in this case.

       **IT IS SO ORDERED.**

Dated:   9/27/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge