UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GRANADOS,<br><br>    Plaintiff,<br><br>v.<br><br>WHARTON NOTE COMPANY,<br><br>    Defendant. | Case No. 23-cv-02948-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 17 |

Before the Court is Plaintiff's motion for preliminary injunction. Dkt. No. 17. The Court finds the matter appropriate for disposition without oral argument and deems it submitted. *See* Civil L.R. 7-1(b). The Court **DENIES** the motion.

## I. BACKGROUND

On July 21, 2023, Elizabeth Granados ("Plaintiff") filed an ex parte application in this Court for a temporary restraining order and preliminary injunction to enjoin Wharton Note Company's ("Defendant") imminent foreclosure of her property. Dkt. Nos. 17. The Court granted the temporary restraining order. Dkt. No. 20 ("Order"). The parties then stipulated several times to extend the restraining order and defer hearing on the preliminary injunction. *See* Dkt. Nos. 24, 27, 35, 38, 42, 55, 66, 76.

In October 2024, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's amended complaint with leave to amend. Dkt. No. 80. The parties then agreed to engage in mediation by December 16, 2024, and that Plaintiff would file an amended complaint by that date if mediation was unsuccessful. Dkt. Nos. 85, 86. The parties failed to reach a settlement in mediation, *see* Dkt. No. 90, and Plaintiff timely filed her second amended complaint. Dkt. 91 ("SAC").

1       Having previously detailed in full the relevant factual allegations in two prior orders, the

2  Court includes only a high-level factual summary here. *See* Order at 2–3; Dkt. No. 80 at 1–2.

3  Plaintiff alleges that she and her former husband obtained a $120,000 second-position mortgage

4  from City National Bank ("the Bank") in 2005, and that they defaulted on the loan in 2010. SAC

5  ¶ 12, 15.[1]  The Bank accelerated the balance and declared the entire sum payable. *Id.* ¶ 15. Then,

6  in 2012, Plaintiff's husband filed for bankruptcy and signed the deed to the property over to the

7  bankruptcy estate. *Id.* ¶ 17.  But Plaintiff contends that because only her name was listed on the

8  mortgage with the Bank, her loan was unaffected by her husband's bankruptcy discharge. *Id.*

9  ¶ 20.  She alleges that she tried (unsuccessfully) to negotiate an alternative to foreclosure with the

10  Bank, but she was nonetheless told in 2014 that the foreclosure action was on hold. *Id.* ¶ 19. By

11  2015, she had stopped receiving monthly statements—or any notices at all—from the Bank or any

12  other entity, and accordingly believed her loan had closed and had stopped accruing interest, and

13  that she did not owe a debt on the loan. *Id.* ¶ 27.

14       In November 2022, Plaintiff received a notice that the Bank had transferred servicing

15  rights and ownership of the loan to Defendant. SAC ¶ 28. In March 2023, Defendant recorded a

16  notice of default on the property, stating that the amount owed was $239,278.00, inclusive of

17  monthly interest charged since 2015. *Id.* at ¶ 29. Defendant then recorded a Notice of Trustee's

18  Sale and set the property for auction on July 26, 2023. *See* Dkt. No. 17-1 at 4.

19       Plaintiff's complaint alleges that Defendant is "undertaking a wrongful non-judicial

20  foreclosure" of her property. SAC ¶ 30. Plaintiff brings the following claims: violation of the

21  Federal Truth in Lending Act ("TILA"); violation of the Fair Debt Collections Practices Act

22  ("FDCPA"); violation of 12 C.F.R. § 1024.41 (TILA's implementing regulations); violations of

23  several California statutes governing default notices; and derivative violations of California's

24  Unfair Competition Law. *See id.* at ¶¶ 33–83.[2]

---

[1] Plaintiff's statement of facts in her second amended complaint appears unchanged from the statement of facts in her first amended complaint. Accordingly, the Court will cite to the operative complaint.

[2] Plaintiff asserts essentially the same claims in the operative complaint as in her prior complaint. The only changes appear to be that Plaintiff removed her claim for breach of the implied covenant

2

## II. LEGAL STANDARD

A plaintiff seeking preliminary relief must establish that: (1) they are likely to succeed on the merits; (2) they is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant]," and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, if the movant does not make the "threshold showing" of serious questions going to the merits, the court need not consider the other factors. *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 497 (9th Cir. 2023) (citing *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)).

## III. DISCUSSION

The Court previously granted Plaintiff's request for a temporary restraining order enjoining the foreclosure of her home after finding that the balance of hardships tipped sharply in Plaintiff's favor given that she had filed her motion on the eve of the foreclosure. Order at 5. The Court also rejected Defendant's primary argument that Plaintiff's TILA claim was time-barred as a matter of law, and on that basis found that Plaintiff had sufficiently pled at least serious questions going to the merits of her TILA claim. *Id.* at 4–5. Now that Plaintiff's request for preliminary injunction is before the Court, the Court considers whether Plaintiff has met her burden to show that she is entitled to the extraordinary relief of continuing to enjoin the foreclosure in the context of the current circumstances of the case, after the foreclosure has been delayed for well over a year.

The Court finds that Plaintiff has not met her burden. As the Ninth Circuit has cautioned,

---

of good faith and fair dealing, which the Court dismissed, and replaced Cal. Civ Code § 2966 with Cal. Civ Code § 2924i, another statute that purportedly governs notices for balloon payments.

"[a] court's equitable power lies only over the merits of the case or controversy before it." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). "A preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted." *See id.* at 635–36 (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "There must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* at 636. "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers*, 325 U.S. at 220). Plaintiff, therefore, must establish that were she to succeed on any of her claims, she would be able to stop Defendant from foreclosing on her home.

Plaintiff has failed to make this threshold showing, as her own allegations reveal an obvious disconnect between her theory of liability and her requested relief.[3] Plaintiff alleges that "[b]ecause of Defendants' inexplicable delay in collecting, and entire failure to communicate the Loan's status, Plaintiff incurred an enormous debt, which includes penalties and interest on back dues that Plaintiff should never have owed but for Defendants' conduct." SAC ¶ 30. But even if these allegations were proven true, Plaintiff does not explain how Defendant's liability for late fees and interest improperly assessed after Plaintiff's default on her mortgage would also make Defendant liable for wrongful foreclosure. Plaintiff alleges that she and her former husband defaulted on their mortgage loan, and the Bank demanded full payment on the loan, in 2010. *See id.* ¶ 15. Her husband signed the deed to the property over to the bankruptcy estate in 2012, and by 2013, Plaintiff alleges she was working with the Bank to arrange a foreclosure alternative. *See id.* ¶¶ 17–18. Plaintiff does not allege any misconduct by Defendant or any other entity in connection with these events surrounding her initial default and the initiation of foreclosure

---

[3] Because the operative complaint does not allege any new or different facts, or assert new or substantively different claims, from the prior complaint, the Court may assess Plaintiff's preliminary injunction motion based on the parties' existing briefing citing the prior complaint.

4

proceedings. Moreover, they took place several years prior to the alleged misconduct involving the notice violations and improper assessment of interest and late fees, which Plaintiff maintains began in 2015. *See id.* ¶ 23. Accordingly, Plaintiff's argument that she "would not be in default and the property would not be in foreclosure if not for Defendants' bad faith tactics," *see id*. ¶ 30, is plainly illogical based on the facts and timeline Plaintiff herself sets forth in the complaint.

The fatal disconnect between the injury claimed in Plaintiff's motion for injunctive relief and the misconduct alleged in her complaint is also evident in the claims she brings. Confusingly, Plaintiff does not allege a wrongful foreclosure claim, but instead brings claims under various state and federal laws governing the notice requirements that apply to mortgage loans.[4] Yet Plaintiff does not cite any legal authority that suggests that prevailing on any of these claims would entitle her to prevent the foreclosure of her home. The complaint appears to concede that under Plaintiff's federal claims, Defendant may be liable for damages, attorney fees, and costs, not injunctive relief that would allow her to stop the foreclosure. *See* SAC ¶¶ 42–43, 52, 61.[5] And while Plaintiff alleges that injunctive relief may be available as to her state law claims, *see id.* ¶¶ 67 (Cal. Civ. Code § 2924.17), 82 (UCL), she still fails to connect the injunctive relief she seeks with the misconduct that is the basis of her complaint. Plaintiff implies that prevailing on her state law claims would entitle her to prevent the foreclosure because Defendant's failure to charge Plaintiff for the proper amount owed on her loan denied her the "chance to defend her property

---

[4] In its opposition, Defendant notes that even if Plaintiff had brought a proper wrongful foreclosure claim, she could not show a likelihood of success on the merits because she has not pled that she could tender the amount that she concedes she properly owes on the loan. *See* Opp. at 11–12. Plaintiff responds that the contention that "a Plaintiff must tender the default amount in a non-judicial foreclosure case is completely unsupportable by law." Reply at 4. Although Plaintiff technically has not pled wrongful foreclosure claim, the Court clarifies that Plaintiff is incorrect. In an action for wrongful foreclosure (which potentially could provide a basis for the relief Plaintiff seeks), a mortgagor seeking to set aside a foreclosure due to irregularities in the foreclosure process must show that they "tendered the amount of the secured indebtedness or [were] excused from tendering." *Diamond Real Est. v. Am. Brokers Conduit*, No. 16-CV-03937-HSG, 2017 WL 412527, at *7 (N.D. Cal. Jan. 31, 2017) (quoting *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

[5] The only source Plaintiff relies on is a CFPB advisory opinion that does not provide legal authority to support her claims, and which does not apply to the circumstances here (as she concedes). *See* Reply at 2–3.

before it went to foreclosure." Mot. at 9. But again, Plaintiff does not cite any legal authority for the proposition that an injunction enjoining foreclosure would be available where the only alleged procedural violations occurred *after* a mortgagor defaulted on her loan and foreclosure proceedings were properly initiated—presumably because such a theory makes little sense.[6] Plaintiff has thus failed to provide any basis for Court to conclude that a sufficient nexus exists between her claims and the extraordinary relief she seeks such that there are serious questions going to the merits of any of her claims. Accordingly, even applying the Ninth Circuit's more relaxed sliding scale standard, Plaintiff's request for preliminary injunction must be denied. *See Petrick*, 68 F.4th at 497.

## IV. CONCLUSION

The Court **DENIES** Plaintiff's motion for preliminary injunction, Dkt. No. 17. The temporary restraining order issued in Dkt. No. 20 is **TERMINATED**.

The Court further **SETS** a case management conference on January 14, 2025, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties are further **DIRECTED** to file a joint case management statement by January 7, 2025.

**IT IS SO ORDERED.**

Dated: 12/20/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[6] Plaintiff cannot show that there are serious questions going to the merits of her UCL claim for the additional reason that her amended complaint fails to cure the defects the Court identified when dismissing the claim in its prior Order. The Court found that Plaintiff failed to sufficiently allege that Defendant's unfair business practices as pled (failure to provide required notices, unlawful charging of late fees and interest) led to her claimed injury (the destruction of her credit). *See* Order at 14. But Plaintiff did not plead any new facts to support her UCL claim or otherwise amend her complaint to cure these defects.

6